SHAW, Judge.
Melvin Gene Hodges appeals the circuit court’s summary dismissal of his Rule 32, Ala.R.Crim.P., petition for postconviction relief, in which he attacked his capital-murder conviction and his sentence of death.
Hodges was initially indicted for two counts of capital murder for his involvement in the murder of Elizabeth Seaton; he was charged with murder during the course of a kidnapping, § 13A-5-40(a)(l), Ala.Code 1975, and murder during the *925 course of a robbery, § 13A-5-40(a)(2), Ala. Code 1975. Hodges presented evidence concerning racial discrimination in the selection of grand-jury forepersons, and the indictment was dismissed. Hodges was reindicted on March 18, 1999, for murder during the course of a robbery, § 13A-5-40(a)(2), Ala.Code 1975. A jury found Hodges guilty and recommended that he be sentenced to life imprisonment without the possibility of parole; eight jurors voted to impose a sentence of life imprisonment without parole and four jurors voted to impose a death sentence. The trial court overrode the jury’s recommendation and sentenced Hodges to death. On direct appeal, this Court initially remanded the case to the trial court for issues relating to the sentencing order and the weighing of the aggravating circumstances and the mitigating circumstances. On return to remand, Hodges’s conviction and death sentence were affirmed. Hodges v. State, 856 So.2d 875 (Ala.Crim.App.2001). The Alabama Supreme Court affirmed the conviction and sentence. Ex parte Hodges, 856 So.2d 936 (Ala.2003). The United States Supreme Court denied certiorari review. Hodges v. Alabama, 540 U.S. 986, 124 S.Ct. 465, 157 L.Ed.2d 379 (2003). A certificate of judgment was issued on April 2, 2003.
In Hodges v. State, 856 So.2d 875 (Ala.Crim.App.2001) (opinion on return to remand), this Court summarized the facts of the crime as follows:
“The State’s evidence tended to show the following. On January 5, 1998, two hunters discovered the nude body of Beth Seaton on the side of County Road 26 in Macon County. The coroner testified that Seaton died as a result of a combination of blunt-force injuries to her head, neck, chest, and abdomen, the most significant being the crushing injuries to her chest and abdomen, which resulted from having been run over by a vehicle. Tire marks ran vertically up and down Seaton’s back. A name tag from the Golden Corral Restaurant with Hodges’s name on it was found near Seaton’s body.
“Hodges and Seaton were coworkers at the Golden Corral Restaurant in Ope-lika. Seaton was a supervisor, and one of her duties was to close the restaurant. Hodges was a crew leader at the restaurant. On January 5, 1998, Trina Eady, another employee at Golden Corral, and Hodges arrived to open the restaurant. The alarm system was deactivated and the safe was open. There was no evidence of a forced entry. They telephoned police.
“An investigation led police to Mario Murph. Murph testified at trial that Hodges suggested robbing the Golden Corral. He said that Hodges told him that Sunday night was the best time because there would be a lot of money in the safe. Murph said that Hodges got the pistol used to murder Seaton from Greg Holstick. The two planned to get to the restaurant while Seaton was closing up. According to Murph, their plans went awry. When they arrived at the restaurant they saw Seaton driving away in her van. They followed the van and were able to get Seaton to pull over. While Hodges was talking to her, Murph said, he entered the van and pointed a gun at her. The two then forced her to drive back to the Golden Corral and open the safe. Murph and Hodges then forced Seaton to drive her van around the area. Murph testified that Seaton sensed that something was going to happen; he stated that she started taking off her clothes and saying that she would have sex with them if they did not hurt her. They eventually made her pull the vehicle over. Murph testified that Hodges said that Seaton knew too much. Hodges then pulled Seaton out of the van and began hitting and choking her. Murph said that while Hodges was *926 holding her, he hit Seaton with a pistol. Murph testified that when he realized what Hodges was going to do he walked away. He said that Hodges got into the driver’s seat in Seaton’s van and ran over Seaton about four times, back and forth. The two then left in Seaton’s van. Murph said that they drove around for several minutes and Hodges realized that his Golden Corral name tag was missing. The two tried to return to where they had left the body, but they were lost and running out of gas. Murph said that he threw Seaton’s purse out of the window near the rest area in Tuskegee and that they parked Seaton’s van at Mount Olive Baptist Church. Hodges’s clothes were covered in blood so he gave them to Murph to dispose of. Murph led police to where he had disposed of Hodges’s clothes. Murph testified that Hodges gave him $2,500 for his part in the robbery/murder. (Murph had $1,427 in his possession at the time of his arrest.)
“Kitty Porter, Hodges’s aunt, testified that, on January 5, 1998, she drove Hodges to Tuskegee. She said that he told her that police had discovered his Golden Corral name tag at the murder scene. Porter testified that Hodges admitted to her that he had robbed and killed Seaton. He told her about the murder — an account that corroborated Murph’s account in almost all respects. Porter testified that Hodges told her that he gave $5,000 to Murph for his part in the robbery/murder.
“Several witnesses also testified that the day after the robbery/murder Hodges had a large quantity of money. Hodges himself testified that he gave his girlfriend $600. Forensic evidence connected Hodges to the robbery/murder. A cigarette butt recovered from Seaton’s van contained saliva, the DNA of which matched Hodges’s. Also, at the time of Hodges’s arrest he had blood on his watch and ring. Furthermore, blood found on the clothes that Murph had discarded for Hodges matched Seaton’s DNA.
“Hodges testified in his own defense and offered his own version of the facts surrounding Seaton’s murder. Hodges testified that he orchestrated the robbery and enlisted the help of Craig Hicks, Greg Holstick, and Mario Murph. Hodges testified that, on the night of the intended robbery, Hicks did not show up and they had to revise their plans. He said that he planned to be at his apartment so that he would not be implicated in the robbery. He said that he wondered what was taking so long and went across the street from the Golden Corral to see what was happening. Hodges further testified that after about one hour Greg Holstick returned and said that they had to get rid of Seaton because she knew them. (Hodges had previously introduced Holstick to Sea-ton.) Hodges said that Holstick gave him $600. Hodges said that he was not present at the time of the robbery or the murder and that he knew nothing about the murder. He said that the State’s witnesses were all lying.”
Hodges v. State, 856 So.2d at 894-96 (footnote omitted). Mario Murph testified against Hodges pursuant to a plea agreement in which the State recommended that Murph receive a sentence of life imprisonment without the possibility of parole. Hodges v. State, 856 So.2d at 894 n. 1.
On March 30, 2004, through counsel, Hodges filed this Rule 32 petition, in which he raised numerous claims, including ineffective assistance of counsel. The case was assigned to Judge Robert Harper, who had presided over Hodges’s trial. On August 6, 2004, Hodges filed an amended petition. ■ On September 3, 2004, the State filed an answer to the amended petition. On October 13, 2004, Hodges filed a response to the State’s answer. On October *927 29, 2004, the State filed a motion for summary dismissal and argued that a majority of the claims in the amended petition were due to be dismissed on procedural grounds. On December 1, 2004, the circuit court granted the State’s motion to dismiss and filed an extensive order setting forth the dismissed claims and the reasons for their dismissal. On January 5, 2005, Hodges filed a motion for reconsideration of the circuit court’s dismissal order. On January 19, 2005, the State filed a motion to schedule an evidentiary hearing on those claims not dismissed by the circuit court. On January 26, 2005, the circuit court ordered that an evidentiary hearing be held on March 29, 2005. This order was issued by Judge John Denson, because Judge Harper had retired from the bench. On January 28, 2005, Hodges filed a motion opposing the State’s motion to set a hearing; Hodges argued a hearing should not be set because the motion for reconsideration of the dismissal remained pending and that setting a hearing date would be premature.
On January 31, 2005, the presiding judge of Lee County appointed retired Judge Robert Harper to preside over the Rule 32 proceeding. On February 10, 2005, the State filed a second motion for summary dismissal, seeking dismissal of four additional claims on grounds that the claims did not raise a material issue of law or fact. On February 16, 2005, Hodges filed a motion opposing the State’s second motion to dismiss certain claims. Also on February 16, 2005, the circuit court entered a brief order denying the amended petition in its entirety. In that order, the circuit court also canceled the evidentiary hearing that had been set for March 29, 2005. Hodges filed a notice of appeal on March 24, 2005.
I.
Hodges contends that the circuit court erred when it adopted the State’s proposed order summarily dismissing several of his claims on December 1, 2004. He argues that by adopting the State’s proposed order, “the trial court stripped away even a veneer of fairness to a man whose life is at stake.” (Hodges’s brief at p. 28; footnote omitted.) Hodges raised this issue below in his January 5, 2005, motion seeking reconsideration of the circuit court’s order.
Alabama Courts have repeatedly upheld the circuit court’s adoption of proposed orders drafted by the State in postconviction cases. For example, in Hyde v. State, 950 So.2d 344 (Ala.Crim.App.2006), we stated:
“Hyde contends that the circuit court erred in adopting the State’s proposed order. Specifically, he argues that there are numerous factual and legal errors in the order that indicate that the order does not represent the court’s own independent judgment, but shows a wholesale adoption of the State’s proposed order without consideration of his claims. However, this Court has repeatedly upheld the practice of adopting the State’s proposed order when denying a Rule 32 petition for postconviction relief. See, e.g., Coral v. State, 900 So.2d 1274, 1288 (Ala.Crim.App.2004), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005), and the cases cited therein. ‘Alabama courts have consistently held that even when a trial court adopts verbatim a party’s proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous.’ McGahee v. State, 885 So.2d 191, 229-30 (Ala.Crim.App.2003).”
950 So.2d at 371.
Thus, even when a circuit court adopts a proposed order in its entirety, the petitioner must show that the findings of fact and conclusions of law in that order are “clear *928 ly erroneous” before an appellate court will reverse the order solely on the basis that the order was submitted by the State. Hodges states in his brief to this Court: “It is apparent from the face of the Court’s order that it did not conduct the independent review of the merits of the Petition to which [Hodges] is entitled.” (Hodges’s brief at p. 28.) However, his statement is based on sheer speculation, and that speculation cannot support a reversal. Thus, the fact that the circuit court adopted the State’s proposed order does not, without more, support Hodges’s claim that reversal is due.
II.
Hodges also contends, and the State agrees, that the circuit court erred when it summarily dismissed four claims from the amended petition on the ground that they did not “relate back” to the original petition. Both parties correctly state that the Alabama Supreme Court, in Ex parte Jenkins, 972 So.2d 159 (Ala.2005), overruled cases that had applied the relation-back doctrine—which provided that a circuit court in Rule 82 proceedings should address only those claims raised in a timely filed first petition and any subsequently filed amendments to that petition that related back to the original petition. Hodges argues that the claims that were dismissed under the relation-back doctrine, which were set out in paragraphs 48, 49, 289, and 332 of the amended petition and which alleged ineffective assistance of counsel and trial-court error, should be reinstated. The State argues that the claims were summarily dismissed on alternative grounds, and that the circuit court’s dismissal of the claims should therefore be affirmed.
Under Ex parte Jenkins, supra, the circuit court erred when it dismissed the claims on the ground that they did not relate back to the original petition. However, it is well settled that if the circuit court is correct for any reason, even if it is not the reason stated by the court, this Court will not reverse the denial of the petition. E.g., Hunt v. State, 940 So.2d 1041 (Ala.Crim.App.2005). We agree with the State’s argument that the claims were properly dismissed on alternative grounds, and we will discuss each claim in later sections of this opinion, along with the alternative reasons that support the circuit court’s dismissal.
We note, additionally, that the circuit court dismissed several ineffective-assistance-of-counsel claims on the ground that the underlying substantive claim had been addressed on direct appeal and no plain error was found to exist. However, several months after the circuit court issued that dismissal order, the Alabama Supreme Court released Ex parte Taylor, 10 So.3d 1075 (Ala.2005), in which the Court stated:
“[W]e granted certiorari review only with respect to the issue whether a determination on direct appeal that there was no plain error in the trial proceedings necessarily forecloses a determination of the prejudice required under Strickland v. Washington[, 466 U.S. 668 (1984),] for a claim of ineffective assistance of counsel raised in a postconviction proceeding. This Court holds that it does not....
[[Image here]]
“The Court of Criminal Appeals’ opinion erroneously concludes that a finding of no plain error on direct appeal automatically precludes a capital defendant from raising a claim of ineffective assistance of counsel in a postconviction proceeding.”
10 So.3d at 1077.
Therefore, the circuit court here erred when it dismissed claims asserted in Hodges’s Rule 32 petition based on this *929 Court’s findings on direct appeal that no plain error had occurred. As stated above, however, if the circuit court is correct for any reason, even if it is not the reason stated by the court, this Court will not reverse the denial of the petition. We have examined each of the claims dismissed on this ground and have determined that summary dismissal was proper for other reasons, and we will discuss those alternative grounds for each of the claims fully below.
III.
Hodges contends that the application of procedural bars to dismiss some of the claims he raised in his petition “reinforces the degree to which current Rule 32 practice undermines the State constitutional right to habeas corpus.” (Hodges’s brief at p. 31.) Hodges raised this claim in his petition, and the circuit court dismissed it, finding that it failed to present a material issue of law or fact which would entitle Hodges to relief, see Rule 32.7, Ala. R.Crim.P., because the procedural default rules in Rule 32 have repeatedly been upheld by Alabama courts. We agree with the circuit court.
In Arthur v. State, 820 So.2d 886 (Ala.Crim.App.2001), Arthur argued that the limitations period contained in Rule 32.2(c), Ala.R.Crim.P., within which a post-conviction petition had to be filed resulted in an unconstitutional suspension of the right to habeas corpus relief. In denying that claim, we quoted with approval from the circuit court’s order:
‘We agree with Judge Hard’s order concerning this argument:
“‘Arthur contends that the two-year statute of limitations in Rule 32 is an unconstitutional suspension of the writ of habeas corpus. While in the nature of a writ of habeas corpus, Rule 32 is, in fact, a procedural mechanism for seeking post-conviction relief and is promulgated under the rule making authority of the Alabama Supreme Court. Legal procedures such as Rule 32 are subject to reasonable procedural restrictions without such restrictions being a suspension of the writ of habeas corpus. Felker v. Turpin, 518 U.S. 651, 663-664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). The two-year statute of limitations for raising constitutional claims in post-conviction proceedings is certainly a reasonable restriction and serves the purpose of requiring that constitutional claims be presented in a reasonable time in order to achieve the meaningful result of finality of criminal judgments.’
“Arthur’s interpretation of Aabama’s Rule 32 proceedings contradicts the express words of the United States Supreme Court in Pennsylvania v. Finley, 481 U.S. 551, 556-57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), where that Court stated:
“ ‘Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. See Fay v. Noia, 372 U.S. 391 [, 83 S.Ct. 822, 9 L.Ed.2d 837] (1963). It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, cf. United States v. MacCollom, 426 U.S. 317, 323[, 96 S.Ct. 2086, 48 L.Ed.2d 666] (1976)....’
“Judge Hard correctly denied relief based on the fact that the petition was filed outside the two-year limitations period.”
Arthur, 820 So.2d at 890 (emphasis added).
The analysis in Arthur of the allegation that the Rule 32 limitations period *930 resulted in a suspension of the writ of habeas corpus applies equally here. The procedural bars contained in Rule 32 are reasonable restrictions on a petitioners’s right to raise claims in postconviction proceedings and they promote finality of judgments. The procedural bars impose no unconstitutional limitations on the writ of habeas corpus. Therefore, the circuit court correctly dismissed this claim for relief.
IV.
Hodges contends that the circuit court erred in dismissing on procedural-bar grounds many of the claims he raised in the Rule 32 petition. Rule 32, Ala.R.Crim. P., sets forth specific requirements regarding pleading and procedural bars in post-conviction proceedings. Rule 32.2(a), Ala. R.Crim.P., states:
“(a) Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:
“(1) Which may still be raised on direct appeal under the Alabama Rules of Appellate Procedure or by posttrial motion under Rule 24; or
“(2) Which was raised or addressed at trial; or
“(3) Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or
“(4) Which was raised or addressed on appeal or in any previous collateral proceeding not dismissed pursuant to the last sentence of Rule 32.1 as a petition that challenges multiple judgments, whether or not the previous collateral proceeding was adjudicated on the merits of the grounds raised; or
“(5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b).”
For the reasons set forth below, we find that many of the claims Hodges raised in his petition are barred by various provisions of Rule 32(a).[1]
The following claims are procedurally barred by Rule 32.2(a)(4), Ala.R.Crim. P., because they were raised or addressed on appeal:
(1) That the trial court erred in denying trial counsel’s requests for funds to hire an investigator, a mitigation expert, a neuropsychologist, and an “expert to investigate the process of electrocution” (Supp. C. 1000),[2] and in granting only $800 to hire a DNA expert, see Hodges, 856 So.2d at 914-16;
(2) That the trial court was biased against Hodges and that its actions prevented Hodges from receiving a fair trial because, Hodges said:
(a) The trial court “expressed frustration” with counsel’s efforts to be thorough in filing and arguing his motions;
(b) The trial court did not rule promptly on pretrial motions filed by defense counsel, and denied the motions without response from the State, demonstrating “a cavalierness regarding the process in this capital case which revealed an underlying bias against the established protections for capital defendants” (Supp. C. 1079);
(c) The trial court’s rulings bolstered the prosecution or undermined *931 the defense and biased the jury against Hodges;
(d) The trial court repeatedly pressured counsel to proceed quickly with the case, interfered with defense counsel’s ability to present a complete case, and demonstrated bias against Hodges;
(e) The trial court interfered in the advocacy process by commenting on a missing link in the State’s testimony regarding bloody pants the codefen-dant found for the police and, in so doing, demonstrated bias against Hodges;
(f) The trial court’s initial rationale for overriding the jury’s sentencing recommendation demonstrated bias against Hodges, see Hodges, 856 So.2d at 898-99;[3]
(3) That Hodges is actually innocent and that the trial court erred when it denied the motion to dismiss the State’s case, which Hodges made at the close of the prosecution’s case-in-chief, because, he said, the State failed to establish that he had killed the victim, see Hodges, 856 So.2d at 926;
(4) That Hodges’s constitutional right to an impartial jury was violated when, Hodges, said:
(a)The trial court chose a grand-jury foreman based on racial characteristics, thus invalidating the indictment, see Hodges, 856 So.2d at 896-97;
(b) The trial court erred when it refused to order personal service of summons for jurors selected to appear for jury duty, see Hodges, 856 So.2d at 913-14;
(c) The trial court impermissibly excluded veniremember L.D. from the venire based on unconstitutional biases regarding her religion, see Hodges, 856 So.2d at 903;
(5)That the Alabama death-penalty sentencing scheme is unconstitutional for the following reasons:
(a) Alabama’s judicial override process in general, and specifically in this case, is unconstitutional, see Ex parte Hodges, 856 So.2d 936, 942-45 (Ala.2003);
(b) Alabama’s judicial override process is unconstitutional because it provides for no standards in the imposition of the death sentence, see Hodges, 856 So.2d at 933-34;
(c) The trial court failed to make adequate findings regarding the aggravating circumstance and mitigating circumstances and it failed to adequately explain its override of the jury’s recommended sentence, see Hodges, 856 So.2d at 930-36;
(d) The heinous, atrocious, or cruel aggravating circumstance is vague and overbroad; must depend on a comparison with other capital cases, which the trial court failed to do in his *932 case; and was not supported by the evidence in this case, see Hodges, 856 So.2d at 930-32;
(6) That the trial court’s findings regarding mitigating circumstances were erroneous, specifically:
(a) The trial court improperly rejected as irrelevant mitigation testimony proffered by Hodges at sentencing, see Hodges, 856 So.2d at 928, 932;
(b) The mitigating evidence in this case is substantial and Hodges should not have been sentenced to death, see Hodges, 856 So.2d at 932-35;
(7) That Alabama’s application of the death penalty is unconstitutional because of racial bias, see Hodges, 856 So.2d at 929-30.
The following claims are procedurally barred by Rule 32.2(a)(5), Ala.R.Crim.P., because they could have been, but were not, raised on appeal:
(1) That the trial court erred when it allowed Hodges’s first appointed counsel, Wes Schuessler, to withdraw;
(2) That the trial court improperly denied defense counsel’s request to permit independent investigations of the physical evidence;
(3) That the exclusion of jurors who indicated that they could not vote to impose a death sentence is unconstitutional;
(4) That the trial court failed to determine whether Hodges was competent to stand trial;
(5) That Hodges’s right to an impartial jury was denied by the misconduct of jurors;[4]
(6) That numerous instances of prose-cutorial misconduct prevented Hodges from obtaining due process and a fair trial;[5]
(7) That Hodges was denied his right to a speedy trial;
(8) That Hodges was improperly convicted of murder during the course of a robbery because, Hodges said, the murder did not occur until at least 30 minutes after the robbery was complete;
(9) That the indictment against Hodges should have been dismissed because, Hodges said, it failed to list the aggravating circumstances on which the prosecution intended to rely in seeking the death penalty, in violation of Ring v. Arizona, 536 U.S. 584 (2002);
(10) That the trial court should have excluded testimony by codefendant Mario Murph because, Hodges said, it was not adequately corroborated;
(11) That the trial court erred when it refused to grant defense counsel access to State records regarding “the makeup of the population in Lee County, as well as the makeup of those holding drivers’ licenses in the County” (Supp. C. 1087) so counsel could determine whether the venire represented a fair cross-section of the community;
(12) That the trial court erred when, in response to the jury’s request for a definition of “life without parole,” it failed to instruct the jury that the term means “life without parole” and that Hodges would never be eligible for release;
*933 (13) That in light of Ring v. Arizona, supra, the Alabama death-penalty sentencing process should be modified to give more weight to a jury’s recommendation of life imprisonment without parole;
(14) That instructing jurors that their verdict at sentencing is a recommendation violates constitutional provisions and makes “a mockery of the jury’s sentencing role in capital trials” (Supp. C. 1097-98);
(15) That under provisions in the United States Constitution and in the Alabama Constitution, “evolving standards of decency have now reached the point that the continued implementation of the death penalty is unacceptable, and it is, therefore, unconstitutional” (Supp. C. 1111), and that Hodges’s death sentence should be vacated;
(16) That a moratorium on the death penalty must be implemented in Alabama so that the current system for imposing the death penalty can be evaluated and revised;
(17) That Hodges’s sentence to death by electrocution is unconstitutional;[6]
(18) That the change in Alabama law, § 15-18-82.1(a), (b), Ala.Code 1975, to provide for lethal injection is unconstitutional, and that lethal injection as a mode of capital punishment is illegal.
Because each of the foregoing claims was due to be dismissed on procedural grounds, no error occurred as a result of the circuit court’s dismissal of these claims.
V.
Many of the claims in Hodges’s amended petition were due to be dismissed because Hodges failed to meet the pleading requirements necessary to avoid summary dismissal. Rule 32.8, Ala.R.Crim.P., provides, in pertinent part, that “[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.” Pursuant to Rule 32.6(b), Ala.R.Crim.P.:
“The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
As this Court noted in Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003):
“ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion “which, if true, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitle[s] a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim.P., to present evidence proving those alleged facts.”
913 So.2d at 1125.
Many of Hodges’s claims alleged that he was denied the effective assistance of counsel. Allegations of ineffective assistance of counsel are governed by the principles set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Strickland, the United States Supreme Court held:
*934 “A convicted defendant’s claim that counsel’s assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.”
466 U.S. at 687.
The United States Supreme Court in Strickland also held:
“Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107,133-134 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ See Michel v. Louisiana, [350 U.S. 91, 101 (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).”
466 U.S. at 689-90.
As to the prejudice component of an ineffective-assistance-of-counsel claim, the Court in Strickland held that “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” 466 U.S. at 694.
This Court has explained how the pleading requirements of Rule 32 relate to claims of ineffective assistance of counsel. In Hyde v. State, 950 So.2d 344 (Ala.Crim.App.2006), we observed:
“The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the *935 [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
950 So.2d at 356.
With the foregoing principles in mind, we consider whether summary dismissal of certain of Hodges’s claims of ineffective assistance of counsel was proper on ground that the claims were not pleaded with sufficient specificity.[7]
A.
Many of Hodges’s ineffective-assistance-of-counsel claims were so conclu-sory and/or vague that they plainly failed to satisfy the pleading requirements of Rule 32.3 and Rule 32.6(b). Hodges alleges that the circuit court erred when it summarily dismissed his claims based on the following:
(1)“Mr. Likins’ failure to point out his own lack of involvement at trial, and the ineffective assistance that resulted at trial, amounted to ineffective assistance of his appellate representation that prejudiced [Hodges’s] otherwise strong chance of receiving a reversal on this ground.” (Supp. C. 998-99.)
(2) “Also ineffective to the point of being non-existent was the representation of [Hodges] by counsel for a significant period of time following his initial arrest. While the record suggests that counsel Wes Schuessler may have been appointed by the Court at the initial appearance hearing, see R.17, there is no record of that hearing to be found. Among other errors, Mr. Schuessler failed to obtain the immediate release of [Hodges], who was arrested at 7:30 pm on January 8, 1998, but who appeared for his initial appearance nearly 90 hours later at 1pm on January 12, in violation of Ala.R.Crim.P. 4.3(b)(2).” (Supp. C. 998.)
(3) “Furthermore, on January 15, 1998, during the critical early phase of the investigation, Schuessler asked to be removed from representing [Hodges]; without asking for explanation, the Court agreed. It was not until twelve days later, on January 27, that Mr. Ray was finally appointed. Mr. Schuessler’s failure to initiate investigations at this stage of the proceedings, his early withdrawal and the subsequent failure to initiate contact with [Hodges], and other errors amounted to ineffective assistance of counsel. Allowing Schuessler to withdraw without explanation at this stage also was error on the part of the Court.” (Supp. C. 998.)
(4) “Before trial, trial counsel made only limited efforts to interview any of the likely witnesses for the state. As a result, trial counsel was unaware of the likely testimony from the vast majority *936 of the state’s fact witnesses.” (Supp. C. 1004.)
(5) “This failure to investigate made adequate trial preparation an impossibility, and deprived [Hodges] of effective representation at trial. Further discussion of the inadequacy of trial counsel’s cross-examination of the state’s witnesses is set forth infra. This failure, if corrected, would probably have resulted in a different outcome at trial. By pointing out misstatements of fact and internal inconsistencies in the testimony of the State’s witnesses, trial counsel could have undermined their credibility, could have challenged the admissibility and/or weight of the physical evidence in this case, and could have substantially bolstered the account offered by [Hodges] in his own testimony.” (Supp. C. 1004; footnote omitted.)
(6) “Before trial, trial counsel failed to communicate adequately with [Hodges]. Despite the fact that [Hodges’s] story about the events of January 4-5, 1998, was [Hodges’s] only defense at trial, trial counsel made essentially no effort to investigate [Hodges’s] story, and failed to point to any physical evidence or elicit any testimony that would have supported [Hodges’s] case. Those failures include, but are not limited to, the following:” (Supp. C. 1005.)
(a) “Trial counsel failed to adequately guide the direct testimony of [Hodges] in a manner that would have made it more persuasive to a jury, and instead allowed him to testify for minutes at a stretch in a manner that, while entirely honest, prevented the clear communication of [Hodges’s] version of events to the jury.” (Supp. C. 1005.)
(b) “Trial counsel failed to elicit testimony from Ms. Eady, [Hodges’s] supervisor and girlfriend, that [Hodges] had been in the victim’s van many times before, making the presence of a cigarette butt entirely unremarkable.” (Supp. C. 1005.)
(c) “Trial counsel failed to elicit from Ms. Eady that despite having been around [Hodges] for a long time, and despite having done much of his laundry, she had never seen him wear the pants stained with blood identified by the co-defendant Mario Murph as belonging to [Hodges].” (Supp. C. 1005.)
(d) “Trial counsel failed to investigate or elicit at trial a police report of a man dressed all in black lurking around the scene of the robbery around the time that the victim was allegedly abducted; this report was consistent with [Hodges’s] testimony that Murph had committed the crime and that he had dressed in a black ‘ninja’ suit before carrying it out.” (Supp. C. 1005.)
(e) “Trial counsel failed to investigate or elicit testimony regarding the basis for [Hodges’s] alibi at the time of the murder.” (Supp. C. 1005.)
(f) “Trial counsel failed to investigate or elicit testimony from Greg Holstick, the individual that [Hodges] understood to have been the second individual who participated in the murder with Murph.” (Supp. C. 1006.)
(g) “Trial counsel failed to investigate whether there was any physical evidence tying [Hodges] to the bloody clothes that Murph had found for the police.” (Supp. C. 1006.)
(h) “Trial counsel failed to investigate the inventory of the victim’s van, and the discovery of evidence in and around it.” (Supp. C. 1006.)
(i) “Trial counsel failed to inquire into contradictions that existed between the trial testimony of several witnesses and statements made by *937 those witnesses on relevant evidentia-ry points.” (Supp. C. 1006.)
(j) “Trial counsel faded to inquire, either before or at trial, whether footprints on the driver’s side of the van that was ultimately abandoned matched shoes identified as belonging to Murph, which would have contradicted Murph’s testimony about the events leading to the abandonment of the van.” (Supp. C. 1006.)
(k) “Trial counsel failed to inquire whether any of the other conspirators identified by [Hodges] had vehicles matching the description of vehicles seen near the victim’s van on the morning of the crime.” (Supp. C. 1006.)
(7) “In an inexplicable oversight, trial counsel asked venire members if they knew the victim’s children, siblings, and father, but failed to ask whether any venire members knew the victim’s husband, Floyd Seaton. This failure occurred despite the fact that trial counsel had requested and received the trial court’s permission to ask if any potential jurors knew Mr. Seaton.” (Supp. C. 1028.)
(8) “Trial counsel also failed to ask any of several approved questions about juror attitudes towards race, despite the fact that [Hodges] is a black man who was charged with the murder of a white woman. Trial counsel failed to ask any of the following questions, which he had submitted to the court pre-trial: “Would you treat all witnesses the same and judge their credibility the same, whatever their race?’ C. -693. ‘If picked as a juror would you do your best to make sure that racial prejudice plays no part in the jury’s deliberations?’ C. 697. ‘Do you believe that the fact that the victim in this case was a white female and the accused is a black male, in and of itself, could make it difficult for you to keep an open mind totally free of any bias or prejudice while considering the evidence to be presented in this case?’ C. 698. Trial counsel’s failure to ask any of these questions denied [Hodges] his right to voir dire jurors on the issue of racial prejudice.” (Supp. C. 1028.)
(9) “Trial counsel also failed to ask approved questions on whether potential jurors knew anyone working in Lee County probation, parole, police, or correctional departments, C. 689; on whether potential jurors might harbor prejudice against [Hodges] because they or family or friends had been victims of crime, C. 691; on whether any potential jurors or their family members had been accused of a violent crime, Ci 690; and on whether any potential jurors had taken any courses in psychology or psychiatry. C. 684.” (Supp. C. 1029.)
(10) “Venire member [C.T.] indicated during voir dire that he knew Investigator Van Jackson with the Lee County Sheriffs Department. R. 387. This relationship could have been particularly prejudicial to [Hodges] because Mr. Jackson was the officer responsible for taking an incriminating statement from [Hodges’s] aunt, Kitty Porter, who testified at the trial for the state. When Ms. Porter was cross-examined, trial counsel tried to suggest that the investigating officers had coerced her confession.” (Supp. C. 1030.)
(11) “[C.T.] also knew district attorney Nick Abbett, as well as one of his assistants, Walter Northcutt. R. 346-347. [C.T.] stated that Mr. Abbett had helped him with a case he had. R. 623. [C.T.] put signs for Mr. Abbett’s campaign up in his yard. R. 522. [C.T.’s] cousin worked in security for then-May- or Folmar of Montgomery. R. 357. [C.T.] also indicated that he had learned from television and newspaper accounts that the victim had a family. Despite these sources of bias, trial counsel did *938 not challenge [C.T.] for cause.” (Supp. C. 1030-31.)
(12) “Venire member [A.M.] indicated during voir dire that his father was murdered in Savannah, Georgia. R. 493. When asked if he would be able to base his verdict in this case on the evidence and not consider the fact of his father’s situation, [A.M.] did not answer affirmatively but instead cryptically replied ‘It’s already been decided.’ He repeated ‘it’s already been decided’ when the court expressed confusion. R. 494. Trial counsel requested no clarifying questions and did not challenge [A.M.] for cause.” (Supp. C. 1031.)
(13) “Venire member [C.P.] indicated that she or a family member or close associate had been the victim of a robbery, kidnapping, or an assault. R. 381. She further indicated that she might know some of the state’s witnesses and that she had placed a sign supporting the political campaign of district attorney Nick Abbett in her yard. R. 394, 509. Despite these indications of bias, trial counsel did not challenge [C.P.] for cause.” (Supp. C. 1031.)
(14) “Trial counsel also failed adequately to challenge the bias of potential jurors who had read media reports on the case. As noted supra, those jurors should have been dismissed for cause, and the failure to press that issue amounted to ineffective assistance.” (Supp. C. 1031.)
(15) “Trial counsel was ineffective for failing to make a for-cause challenge or peremptory challenge against juror [J.S.], and for failing to request followup questioning on sources of bias indicated by [J.S.]. [J.S.] stated during voir dire that his uncle had been murdered in Lee County, R. 363, and that his brother worked for the Tallapoosa Sheriffs Department. R. 358. [J.S.] was placed on the jury that convicted [Hodges].” (Supp. C. 1032.)
(16) “Trial counsel was ineffective for failing to make a for-cause challenge or peremptory challenge against juror [G.N.], and for failing to request followup questioning on sources of bias indicated by [G.N.]. [G.N.] stated during voir dire that she knew Margaret May-field, assistant to district attorney Nick Abbett, and Mike Kinser, a State witness who was the general manager of the Golden Corral, the restaurant where the robbery occurred. R. 346, 380. [G.N.] further stated that at the time of the crime, she worked at the Farmer’s National Bank in the Winn Dixie located directly behind the Golden Corral, and that Farmer’s National Bank did business with the Golden Corral. R. 502-3. [G.N.] was placed on the jury that convicted [Hodges].” (Supp. C. 1032.)
(17) “Trial counsel was ineffective for failing to make a for-cause challenge or peremptory challenge against juror [B.W.], and for failing to request followup questioning on sources of bias indicated by [B.W.]. [B.W.] informed the court during voir dire that her son-in-law was a Phenix City police officer, and that her daughter worked for the Office of Professional Standards in Columbus. [B.W.] further revealed that her son was stabbed by his girlfriend in Columbus. R. 359, 364. [B.W.] was placed on the jury that convicted [Hodges].” (Supp. C. 1032.)
(18) “Trial counsel was ineffective for failing to make a for-cause challenge or peremptory challenge against juror [W.B.], and for failing to request followup questioning on a source of bias indicated by [W.B.]. [W.B.] lives within a few blocks of [Hodges’s] mother. He indicated during individual voir dire that he heard about the case ‘on the T.V., the newspaper, and the peoples talking.’ When asked if he remembered anything specific about what he had heard, [W.B.] *939 responded ‘the only thing they said was, talking about him; you know, why did he do it, you know, and things like that.’ R. 426.[W.B.’s] response indicated that he, or at least people with whom he had talked about the case, already believed [Hodges] to be guilty. [W.B.] was placed on the jury that convicted [Hodges].” (Supp. C. 1032-38.)
(19) “Trial counsel was ineffective for failing to make a for-cause challenge or peremptory challenge against juror [E.J.]. During voir dire, [E.J.] revealed that she strongly identified with the victim. She remembered ‘a great deal’ about the case because she and the victim ‘shared the same first name.’ When the court asked, “You are talking about the victim?’ [E.J.] responded, ‘the victim. Yes. And just to be — the victim. Yes. And just to be friendly and outgoing, I thought of myself, and — and the family, a picture of the children — the children and the family at a grave site.’ R. 478. [E.J.] was placed on the jury that convicted [Hodges].” (Supp. C. 1033.)
(20) “Several potential jurors were removed by the trial court for cause based on the court’s conclusion that those jurors could not follow the law and, if appropriate, find [Hodges] guil[t]y, or to sentence him to death, even if the circumstances of the case warranted such a result. Most of those jurors, however, would, in fact have indicated a willingness to convict a defendant or sentence him to death in at least some circumstances. By failing to press those jurors for circumstances in which they might, in fact, be willing to follow the law, or failing to press the court to make relevant inquiries on this issue, trial counsel was ineffective. The loss of jurors whose views of the death penalty would have resulted in a stringent, but nevertheless fair, application of relevant law was prejudicial, since it deprived the jury of what would likely have been the most effective advocates of a sentence of life without parole.” (Supp. C. 1033-34.)
(21) “[T]rial counsel failed to examine Ms. Eady regarding her familiarity with [Hodges’s] clothing. If he had interviewed her in advance, or asked additional questions on cross-examination, he would have elicited testimony that Ms. Eady was familiar with [Hodges’s] clothing, and that she did not recognize the pants on which the victim’s blood had been found.” (Supp. C. 1041.)
(22) “Prosecution witness Carol Cur-lee examined prints taken from Ms. Sea-ton’s van. Although trial counsel elicited testimony that [Hodges’s] prints were not found in the van, trial counsel failed to elicit testimony to explain the significance of this fact. Trial counsel also failed to elicit testimony regarding the absence of any prints on the name tag found at the scene.” (Supp. C. 1041.)
(23) “The cross-examination of Marle-na Maddox, Mario Murph’s girlfriend, was inadequate for a number of reasons. For instance, she testified that [Hodges] wore gray pants when he left the apartment on the night of the crime and blue jeans when he returned. R. 1004. Trial counsel failed to adequately question Ms. Maddox about the pants that [Hodges] wore on the night of the crime and whether the blood stained pants were the gray pants which [Hodges] wore when he left the apartment. He also failed to adequately cross-examine her regarding her biases in the case, and failed to examine her on inconsistencies between her testimony and other evidence regarding the clothing that Murph had been wearing on the night of the crime.” (Supp. C. 1041-42.)
(24) “Trial counsel failed to adequately cross-examine Kitty Porter, [Hodg *940 es’s] aunt, who was the only person who testified that [Hodges] had told her that he had killed Ms. Seaton. For instance, trial counsel failed to identify Ms. Porter’s drug problems, and the number of areas in which she was pressured by the police to testify [against Hodges]. He failed to cross-examine her on inconsistencies in her prior statements, and substantial internal inconsistencies in her statement to the police. He failed to point out that she gave her statement after the police had interrogated Murph, and that the police were thereby able to coordinate the statements of Ms. Porter and Murph. He further failed to point out the likely effect of the district attorney’s effort to intimidate Ms. Porter at trial, as well as the fact that a pretrial interview with her was given in the presence of a police officer. Trial counsel also failed adequately to object to the State’s examination of Ms. Porter, and in particular the state’s impermissible use of her written statement.” (Supp. C. 1042.)
(25) “Trial counsel failed to adequately examine Annie Ware in order to reveal likely biases in association with her testimony. Ms. Ware was a ‘bootlegger’ who would have been under obvious pressure to cooperate with police in order to remain in their good graces. Despite this obvious bias, as well as damaging testimony from Ms. Ware regarding the timing and other aspects of the case, trial counsel failed to cross-examine Ms. Ware at all.” (Supp. C. 1042.)
(26) “Although trial counsel knew that his client had indicated that Greg Hol-stick was involved in the murder (along with co-defendant Murph), trial counsel failed to investigate, and then failed to pursue, this claim in cross-examination at trial (or, for that matter, in the defense case). This failure to pursue or even raise the issues with Holstick prevented [Hodges’s] trial testimony from having any grounding in previously-established testimony, undermining and failing to support [Hodges’s] case.” (Supp. C. 1042.)
■(27) “Trial counsel utterly failed to inquire in cross-examination into the conditions surrounding the collection and keeping of the physical evidence in this case. The failure to challenge the collection and chain of evidence issues amounted to unconstitutionally inadequate representation that seriously prejudiced [Hodges’s] case. See infra (regarding failures of inquiry regarding chain of custody).” (Supp. C. 1044.)
(28) “Trial counsel failed to object to the prosecution’s repeated reference to Angelo Della Manna as ‘Doctor,’ even though Della Manna had no doctorate degree. Compare R. 842, 846, 849; 851; 856, 864, with R. 900. Such statements by the prosecutors improperly bolstered the testimony of Della Manna, the prosecution’s DNA expert, and one of the few sources of information allegedly tying [Hodges] to the crime scene (through his DNA on a cigarette allegedly found in the victim’s van). If the effect of such improper bolstering were eliminated through proper objections, the jury would likely have had further doubts regarding [Hodges’s] participation in the crime.” (Supp. C. 1047-48.)
(29) “In closing, see R. 1124, the prosecution improperly alleges that the evidence demonstrated that the DNA on the cigarette butt found on the driver’s side door was [Hodges’s]. The testimony on this point, however, was thoroughly confused, Compare R. 701, 909 (reversing locations in which Exhibits 42 and 43 were found) and [Hodges’s] counsel should have objected to the statement. Given the significance of the cigarette butt, the failure to object was prejudicial.” (Supp. C. 1048.)
*941 (30) “Trial counsel failed to adequately protect [Hodges’s] right to a fair trial when he failed to object to prejudicial statements made by the prosecution. During his closing/rebuttal argument, District Attorney Abbett referred to [Hodges] as a liar. The District Attorney stated, ‘He is a liar and he insults your intelligence.’ R. 1152. Mr. Ab-bett’s statements were not tied to any facts of the case and served no purpose other than to inflame the jurors. Trial counsel failed to object to Mr. Abbett’s baseless characterization of [Hodges] as a liar. Petitioner was prejudiced and denied a fair trial by Mr. Abbett’s statements and trial counsel’s failure to take appropriate corrective action.” (Supp. C. 1049.)
(31) “Trial counsel failed to move for a judgment of acquittal at the end of the state’s case. The Court had to do it for him[.] See R. 1049-50. The failure to develop a coherent argument for acquittal in light of the sparse evidence linking [Hodges] to the crime scene and the near-exclusive reliance on Murph’s testimony was inexcusable. Reasonable doubt is per se present when two co-defendants offer conflicting testimony and there is minimal physical evidence linking the defendant to the crime itself. Trial counsel failed to present this argument to the trial court, resulting in a denial of the motion. Trial counsel’s representation was therefore inadequate on this issue, and it prejudiced [Hodges] to his substantial detriment, since an effectively-argued motion for acquittal might reasonably have led to the granting of such a motion, or, in the alternative, to a sufficient residual of uncertainty about [Hodges’s] liability such that the trial court (like the jury) would have hesitated to sentence [Hodges] to death.” (Supp. C. 1049.)
(32) “The trial court interrupted trial counsel’s closing argument to have a bench discussion about the jury charges. Trial counsel failed to object to this interruption, which fragmented defense’s closing arguments and may have left jurors with the impression that the trial court was reprimanding the trial counsel. The trial court did not interrupt the prosecution’s closing arguments. Trial counsel’s failure to object to this interruption denied [Hodges] a fair trial.” (Supp. C. 1051.)
(33) “When the trial court charged the jury on the possible offenses of which it could convict [Hodges], the trial court failed to define kidnapping. Trial counsel did not object to the trial court’s failure to define kidnapping. Had trial counsel objected, jurors would have been instructed on the definition of kidnapping. Trial counsel’s failure to object denied [Hodges] a fair trial by an adequately instructed jury.” (Supp. C. 1054.)
(34) “In addition to the specific areas of inadequacy detailed above, [Hodges’s] trial counsel was constitutionally inadequate to the degree that he should have, but failed to, raise at trial or at any other time, the issues or objections set forth herein. These errors also include matters noted by the appellate courts as having not been raised in a timely manner, including the failure to request followup questions in voir dire, or to challenge potential jurors for cause, as well as the failure to object to the exclusion of potential jurors for cause. 856 So.2d at 903-14.” (Supp. C. 1059.)
(35) “Furthermore, to the degree that any of the issues presented in this petition are issues that could or should have been, but were not, adequately raised and presented on appeal, the failure to do so amounts to inadequate representation of appellate counsel. The failure to present these meritorious claims was necessarily prejudicial, since if they had *942 been raised, there would have been a reasonable probability that the outcome would have been different for the reasons stated in association with each of these claims.” (Supp. C. 1060.)
To satisfy the burden of pleading set out in Rule 32.3 and Rule 32.6(b), Ala.R.Crim.P., for each of the foregoing claims, Hodges was required to “identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,” Strickland, 466 U.S. at 690, and also to plead specific facts indicating that he was prejudiced by the acts or omissions — facts indicating that there existed a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Asserting bare conclusions of deficient performance and prejudice do not satisfy the pleading requirements. In each of the foregoing claims, we find that Hodges clearly failed to plead sufficient facts supporting both prongs of the Strickland test. Therefore, summary dismissal of these claims was proper.
B.
Hodges contends that his appointed trial counsel, Larry Ray, did not have sufficient experience to serve effectively as his attorney. Specifically, Hodges alleges that counsel was ineffective in his presentation of pretrial motions in that he filed some motions that were unnecessary or premature and that doing so prevented him from investigating the case and establishing rapport with Hodges. Hodges also alleges that counsel’s ineffectiveness was demonstrated through his inability to negotiate a plea bargain which, Hodges says, counsel for his codefendant had been able to negotiate. However, Hodges failed to identify in his petition which motions counsel filed unnecessarily or prematurely, and he failed to allege any facts to support his conclusory statement that, had counsel not filed certain motions, he would have had more time to build trust with Hodges and to investigate his case. Hodges also failed to plead any facts to suggest that, had counsel been more experienced, he would have been able to negotiate a plea agreement with the State, or that the State would have been inclined under any circumstances to offer Hodges a plea deal. Furthermore, Hodges failed to allege any specific facts to support his conclusion that he was prejudiced by counsel’s actions.
Hodges also alleged in his petition that “[t]he representation provided by the [S]tate to Petitioner is also demonstrably ineffective, in that it failed to comport in even the most basic respects with the form or substance of representation that has been deemed by the American Bar Association to be adequate in capital cases,” and he cited to the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (Feb.2003). (Supp. C. 994.) He then alleged that the representation in this case “failed to comport with every one of those standards” (Supp. C. 995), but he failed to plead any facts to support this claim or to indicate how counsel failed any standards.
These claims do not include a “clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds.” Rule 32.6(b), Ala.R.Crim.P. Therefore, summary dismissal was proper.
C.
Hodges contends that his other appointed attorney, Floyd Likins, was also ineffective. Hodges claimed in his petition that Likins “did virtually nothing to prepare for the case” and that he was “irrelevant to the pretrial and trial proceedings.” (Supp. C. 997.) Hodges stated:
*943 “Mr. Likins’ representation of [Hodges] at trial was wholly inadequate for at least all the reasons that Mr. Ray’s representation was inadequate, and the lack of adequate representation prejudiced [Hodges] severely, since the active assistance of an experienced criminal attorney can ... make the difference between guilty and innocence and between life and death.”
(Supp. C. 997-98.)
Hodges made only nonspecific and bare allegations that Likins’s performance was deficient, he failed to identify any specific actions Likins should have taken, and he failed to plead any facts indicating how Likins’s actions prejudiced him. Nowhere in the pleading did Hodges allege that, but for Likins’s actions, the outcome of the trial would have been different. Therefore, summary dismissal of this portion of the claim was proper.
D.
Hodges contends that the circuit court erred when it summarily dismissed the claims in his petition alleging that “trial counsel should have made further efforts to investigate the physical evidence presented in this case. The failure to do so, particularly with respect to the critical evidence allegedly tying [Hodges] to the crime, was constitutionally inadequate, and seriously prejudiced the presentation of [Hodges’s] case.” (Supp. C. 1007.) After making this allegation, Hodges then listed the following in his petition as error: trial counsel failed to investigate or elicit testimony to determine whether the bloodstained pants, underwear, and shirt belonged to Hodges, which might have linked the clothing to someone other than Hodges; trial counsel failed to investigate the brands of cigarettes Hodges and his eode-fendant smoked “or to otherwise identify or attempt to determine the source and provenance of the cigarette butts found in the van” (Supp. C. 1007); trial counsel failed to investigate or elicit testimony regarding the presence of fingerprints on the name tag found near the victim’s body, “or the fundamental implausibility that something so incriminating as a name tag would have been found, resting face up, within several feet of the victim’s body” (Supp. C. 1008); trial- counsel failed to examine videotapes of the crime scene and security videotapes collected from surrounding businesses, which “would have bolstered [Hodges’s] version of events and undermined the prosecution’s version of events” (Supp. C. 1008); trial counsel failed to inquire into the likelihood of error in the time stamp on the receipt from a Wal-Mart discount store and likely could have revealed that the time stamp was incorrect, which would have rehabilitated his credibility; trial counsel failed to articulate a more detailed basis for the motion seeking independent testing of the physical evidence; trial counsel failed to adequately review police reports and interviews and as a result, “failed to identify conflicting testimony, substantial weaknesses in the state’s case, and potential strengths in [Hodges’s] case” (Supp. C. 1008); and “trial counsel made almost no inquiries into the chain of custody and evidentiary issues,” thus permitting “the introduction and description of various items of evidence that should have been kept out of evidence or that could have had their impact at trial significantly reduced” (Supp. C. 1008-09).
Although Hodges identified several acts or omissions of counsel that he believed constituted deficient performance, he failed to include in his petition any specific facts indicating how those acts or omissions prejudiced his defense. See, e.g., Bracknell v. State, 883 So.2d 724, 728 (Ala.Crim.App.2003). Hodges was required to plead specific facts indicating that there is a reasonable probability that, but for counsel’s acts or omissions, the result of the *944 proceeding would have been different. The bare allegation that prejudice occurred did not satisfy the pleading requirements. In his brief to this Court, Hodges has included more factual allegations in an attempt to support his argument that the circuit court erred in summarily dismissing these claims. However, in Bearden v. State, 825 So.2d 868, 872 (Ala.Crim.App.2001), we stated: “Although Bearden attempts to include more specific facts regarding his claims of ineffective assistance of counsel in his brief to this Court, those allegations are not properly before this Court for review because Bearden did not include them in his original petition before the circuit court.” Therefore, summary dismissal of the foregoing claims was proper.
E.
Hodges contends that the circuit court erred when it summarily dismissed claims that his trial counsel were ineffective in their investigation and presentation at the penalty phase of trial of the possibility that Hodges was mentally ill or that he suffered from brain damage. Regarding counsel’s investigation, Hodges alleged in his petition:
“Trial counsel failed to adequately investigate the possibility that Hodges is brain damaged and mentally ill. Trial counsel specifically failed to adequately explore and investigate [Hodges’s] suicide attempt and likely depression. The summer after [Hodges] turned sixteen, he attempted suicide. [Hodges] was devastated after breaking up with his girlfriend. He told her that he wanted to take his life and she laughed at him. In an attempt to take his own life, [Hodges] overdosed on pills. He was taken to the hospital where doctors pumped his stomach. Although doctors wanted him to stay overnight for observation, [Hodges] decided to check himself out of the hospital that evening.
“Trial counsel also failed to investigate [Hodges’s] bouts with depression and anxiety. [Hodges] exhibits symptoms of an anxiety disorder.
“Trial counsel also failed to investigate [Hodges’s] likely brain damage and the possibility that he suffers from mental illness. Specifically, trial counsel failed to investigate the effects of turpentine exposure, sheetrock ingestion, and multiple head injuries which [Hodges] sustained.
“From birth, [Hodges] was exposed to toxic substances that potentially affected his brain development. His mother gave birth to him on a turpentine camp and she was exposed to turpentine throughout her pregnancy with [Hodges]. [Hodges’s] father worked in turpentine and came home from work doused in turpentine, five nights a week. The Hodges lived in a small home, so [Hodges] stayed in close contact with his father’s turpentine drenched clothes.
“Trial counsel failed to investigate the effects of ingesting sheetrock. As a baby, [Hodges] frequently ate sheetrock from the walls of the Hodges’ home. When [Hodges’s] mother finally caught him eating sheetrock, he had eaten a sizable portion of the wall. He ingested not only the sheetrock but also the lead paint which covered it. [Hodges’s] ingestion of these substances as a toddler potentially impaired his brain development, a possibility which trial counsel failed to explore.
“Trial counsel also failed to adequately investigate the head injuries that [Hodges] suffered. When [Hodges] was a toddler, he struck his head on the corner of an iron bed. He received a bleeding gash on his head. [Hodges] also hit his head on the corner of a dresser causing a lump and a bleeding wound on his forehead. Both of these *945 incidents left scars which remain visible on [Hodges’s] forehead. [Hodges] received no medical attention for either of these head injuries suffered at home.
“[Hodges] hit his head again in elementary school. He tripped while walking into the school and the door hit him in the head, rendering him unconscious. This was the first head injury for which [Hodges] received medical attention.
“By failing to investigate the possibility that [Hodges] was either mentally ill or suffered from brain damage, trial counsel’s performance was deficient and resulted in substantial prejudice to [Hodges].”
(Supp. C. 1024-25.) In a separate claim in his petition, Hodges also alleged that trial counsel were ineffective for failing to present any of the foregoing evidence. (Supp. C. 1058.)
The circuit court stated in its order:
“Hodges fails to specify what information or testimony would have been discovered had trial counsel adequately investigated his mental health. Instead, Hodges offers only mere speculation without offering any specific facts that would have been discovered through an adequate investigation. For example, Hodges alleges that he ‘exhibits signs of an anxiety disorder.’ (Pet. At 41, ¶ 158) However, Hodges does not disclose what these symptoms are or how such symptoms may mitigate his actions on the night of the crime. Hodges also alleges that counsel was ineffective for failing to investigate the possible effects of ‘turpentine exposure, sheetrock ingestion, and multiple head injuries.’(Pet. At 41, ¶ 159) Yet, Hodges does not plead any facts detailing what the effects would be or how it would mitigate the capital murder. In Thomas v. State, 766 So.2d 860, 892 (Ala.Crim.App.1998), the Alabama Court of Criminal Appeals, citing Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir.1998), held that ‘claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result.’ Accordingly, this claim is summarily dismissed for failure to comply with the specificity and full factual pleading requirements of Rule 32.6(b). Ala.R.Crim.P.32.7(d).”
(Supp. C. 902-03.) As to the claim regarding trial counsel’s failure to present the evidence at the penalty phase of trial, the court issued identical findings and dismissed it for failure to comply with the pleading requirements of Rule 32.6(b). (Supp. C. 911-12.)
The circuit court’s findings on these issues are correct, and we adopt them as our own. Hodges’s claims were speculative; he pleaded no facts to support the conclu-sory allegations of possible brain damage and mental illness, “likely depression,” potential brain developmental problems caused by turpentine exposure, or an anxiety disorder. Not only did Hodges fail to provide any specific facts to support the allegations regarding his possible mental deficiencies, he failed to include in his petition any facts tending to indicate what information counsel would have discovered if they had conducted an “adequate” investigation, how that information would have aided counsel in the presentation of his case, and whether the evidence would have been admissible. Finally, Hodges failed to allege any specific facts regarding prejudice he suffered as a result of trial counsel’s actions. E.g., Bracknell v. State, 883 So.2d 724, 728 (Ala.Crim.App.2003). The pleading requirements of Rule 32.3 and Rule 32.6(b) required that Hodges allege specific facts indicating that the result of the proceeding probably would have been different if counsel had investigated the possibility that Hodges suffered from *946 brain damage and mental illness. Because Hodges failed to plead these claims with any specific facts, they were properly dismissed by the circuit court.
F.
Hodges contends that the circuit court erred when it dismissed the claim that trial counsel were ineffective for failing to move for a change of venue on the ground that the media covered the case extensively and “almost two-thirds of the jurors indicated that they had heard about the crime, and some members of the venire indicated that they had deemed [Hodges] guilty on the basis of the pretrial publicity_” (Supp. C. 1028.) Hodges failed to plead this allegation with the factual specificity required by Rule 32.8 and Rule 32.6(b). He did not list the name of a single juror who had heard of the crime and alleged only that “some jurors” had prejudged his guilt based on the media coverage, and he did not allege that those veniremembers served on his jury. Hodges also did not provide any facts about the media coverage to indicate that it was biased or that it prejudiced him in any way. Widespread publicity, alone, does not require a change of venue. See McGahee v. State, 885 So.2d 191, 211 (Ala.Crim.App.2003). A change of venue is to be granted only when the defendant establishes that prejudicial pretrial publicity saturated the community or when actual prejudice can be demonstrated. E.g., Carruth v. State, 927 So.2d 866, 875-78 (Ala.Crim.App.2005). Hodges alleged only that widespread publicity had existed and that “some” veniremembers prejudged him; those facts, even if true, were not sufficient to establish that he was entitled to relief. Therefore, summary dismissal of this claim was proper.
G.
Hodges alleged in his petition:
“Trial counsel’s failure to move for change of venue was all the more ineffective in light of the fact that the murder for which the defendant was convicted was committed not in Lee County, but in Macon County. This failure was substantial and likely prejudicial. Under Ala.Code § 15-2-2, ‘[u]nless otherwise provided by law, the venue of all public offenses is in the county in which the offense was committed.’ Because the murder was committed in Macon County, the indictment should have issued there, and the trial should have occurred there.”
(Supp. C. 1027; footnote omitted.)
This claim was due to be summarily dismissed because it is meritless on its face. Hodges was convicted of murder during the course of a robbery, and the crime began with the robbery in Opelika, which is in Lee County. The fact that Hodges drove the victim to Macon County and killed her there did not warrant a change of venue. “When an offense is committed partly in one county and partly in another or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, venue is in either county.” § 15-2-6, Ala.Code 1975. Because venue was proper in Lee County, a motion for a change of venue on this basis would not have been granted. In Miller v. State, 913 So.2d 1148, 1162 (Ala.Crim.App.2004), we stated that “defense counsel cannot be said to have rendered ineffective assistance by not seeking a change of venue where there was insufficient evidence to show that he was entitled to such a change.” See also Bedwell v. State, 710 So.2d 493, 497 (Ala.Crim.App.1997) (“Counsel cannot be said to be ineffective for failing to file a motion for which there is no legal basis.”). Therefore, summary dismissal of this claim was proper.
*947 H.
Hodges contends that the circuit court erred in summarily dismissing the claim alleging that trial counsel were ineffective for failing to object to the improper removal of veniremembers L.D. and G.W. without additional questioning. Specifically, Hodges alleged in the petition that counsel should have objected when the trial court excused L.D. because she was a Jehovah’s Witness and did not believe in sitting in judgment. He further alleged that counsel should have objected when the trial court excused G.W. after she said she was uncomfortable sitting in judgment of others.
Noticeably absent from Hodges’s claims are any specific facts regarding what additional questions the trial court should have asked L.D. and any allegation at all that Hodges suffered any prejudice as a result of trial counsel’s failure to object to the trial court’s decisions to excuse these veniremembers. Hodges was required to plead specific facts indicating that there is a reasonable probability that, but for counsel’s acts or omissions, the result of the proceeding would have been different. E.g., Bracknell v. State, 883 So.2d 724, 728 (Ala.Crim.App.2003). Because Hodges failed to provide a clear and specific statement of the grounds for relief, summary dismissal was proper.
We note, additionally, that summary dismissal of this claim was proper because it was meritless on its face. The Alabama Supreme Court, in Evans v. State, 794 So.2d 411 (Ala.2000), considered the effect of a trial court’s erroneous ruling on a challenge for cause. The Court stated:
“Evans argues that the trial court’s error in excusing E.F.W. violated his right to a trial by an impartial jury, a right guaranteed by Amendments 6 and 14 of the United States Constitution and § 6 of the Alabama Constitution. However, the United States Supreme Court has held that a defendant’s federal right to an impartial jury was not automatically violated merely by an erroneous ruling on a challenge for cause. Ross v. Oklahoma, 487 U.S. 81, 87-88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); see also United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). As long as the jury that heard the case was impartial, the right guaranteed by the United States Constitution was not violated. See Ross, 487 U.S. at 87-88, 108 S.Ct. 2273. This rule would also apply to § 6 of the Alabama Constitution, which gives the defendant the right to a trial ‘by an impartial jury of the county or district in which the offense was committed.’ The plain meaning of this language is that the defendant is entitled only to an impartial jury and that unless the defendant can show that a trial court’s erroneous ruling during jury selection prevented the jury from being impartial, there is no violation of § 6.
“Evans has made no showing that his rights, such as his right to an impartial jury, were probably injuriously affected by the trial court’s excusing E.F.W. Therefore, we conclude that the trial court’s error in excusing E.F.W. was not reversible, because, even with the error, Evans still had a fair trial with an impartial jury.”
Evans, 794 So.2d at 414. See also Ray v. State, 809 So.2d 875 (Ala.Crim.App.2001).
I.
Hodges contends that the circuit court erred when it summarily dismissed the claim alleging that trial counsel should have requested an inquiry into the fact that Assistant District Attorney Thomas Rountree had represented Hodges for approximately two weeks in 1993 on a controlled-substances charge, until he moved to withdraw from the case. Hodges al *948 leged that he had informed trial counsel about the prior representation, but that counsel did not inform the trial court or request that Rountree be prohibited from working on Hodges’s capital-murder case. Because trial counsel did not object, Hodges alleged, Rountree and other members of the prosecutor’s office “were free to share impressions and information in order to charge or prosecute the case against [Hodges].” (Supp. C. 1034.) If trial counsel had objected, Hodges alleged, “the unique information gathered by Mr. Roun-tree about [Hodges] would not have been communicated to the prosecution in this case, which would have undermined the substantial advantage held by the prosecution and would likely have resulted in a different outcome at trial.” (Supp. C. 1034-35.)
The circuit court correctly determined that this claim was insufficiently pleaded because it failed to include the full factual basis of the claim. Hodges failed to allege that Rountree did, in fact, share any information with other members of the prosecutor’s office, and he failed to plead any specific facts regarding what “unique information” Rountree allegedly gathered that could have been shared with the prosecution in this case. He also failed to allege any specific facts indicating the manner in which he was prejudiced by the possible communication of this unique information. Because Hodges failed to plead this claim with the degree of specificity required by Rule 32.3 and Rule 32.6(b), summary dismissal was proper.
J.
Hodges contends that the circuit court erred when it summarily dismissed the claim alleging that trial counsel were ineffective for failing to object to Detective Ronnie Robertson’s presence at the prosecution’s table throughout the trial of the case. This claim was properly dismissed because Hodges failed to plead any facts in the petition indicating that, but for counsel’s failure to object to Det. Robertson’s presence, the result of the proceeding would have been different. Hodges alleged only that counsel’s failure to object “violated [Hodges’s] right to a fair trial.” (Supp. C. 1035.) This bare allegation that a constitutional right has been violated was insufficient to warrant any further proceedings. E.g., Callahan v. State, 767 So.2d 380, 390(Ala.Crim.App.l999).
The claim was also due to be dismissed because it was meritless on its face. As we noted on direct appeal in this case, the prosecutor asked the trial court if Det. Robertson could be excluded from the rule requiring potential witnesses to remain outside the courtroom during trial, and the court granted the request. Hodges v. State, 856 So.2d 875, 901 (Ala.Crim.App.2001). In considering whether a trial court erred when it allowed a witness to remain in the courtroom, we have held:
“ ‘Rule 9.3(a), Ala.R.Crim.P., authorizes the trial court to exclude potential witnesses from the courtroom prior to or during proceedings. The Committee Comments to Rule 9.3(a) state that “the power to exclude and separate witnesses is entirely a matter of discretion with the trial court.” The Comments cite Teague v. State, 245 Ala. 339, 16 So.2d 877 (1944); and Beddow v. State, 39 Ala.App. 29, 96 So.2d 175 (1956), cert. denied, 266 Ala. 694, 96 So.2d 178 (1957), cert. denied, 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414 (1958). “ ‘Investigators or police officers commonly are exempted from the rule.’ J. Colquitt, Alabama Law of Evidence § 6.15 at 333 (1990). See also C. Gamble, McElroy’s Alabama Evidence § 286.01 (4th ed.1991). See also Rule 9.3, Ala.R.Crim.P.” Taylor v. State, 666 So.2d 36, 66 (Ala.Cr.App.1994), aff'd, 666 So.2d 73 (Ala.1995), *949 cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996). “Alabama appellate courts have time and again refused to hold it an abuse of discretion on the part of a trial court to allow a sheriff, police chief, or similarly situated person who will later testify to remain in the courtroom during trial.” Ex parte Lawhorn, 581 So.2d 1179, 1181 (Ala.), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991) (citing several Alabama cases holding to same effect).’
“Weaver v. State, 710 So.2d 480, 484 (Ala.Cr.App.1997); see also Johnson v. State, 648 So.2d 629 (Ala.Cr.App.1994).”
Whitehead v. State, 777 So.2d 781, 802 (Ala.Crim.App.1999), aff''d, 777 So.2d 854 (Ala.2000). Thus, the trial court acted well within its discretion to excuse the detective from the rule. Counsel do not render deficient performance when they fail to make an objection that has no legal basis. See, e.g., Hamm v. State, 913 So.2d 460, 490 (Ala.Crim.App.2002).
Therefore, summary dismissal of this claim was proper.
K.
Hodges contends that the circuit court erred when it summarily dismissed the claim alleging that trial counsel were ineffective for failing to object to victim-impact evidence presented during the guilt phase of the trial. He alleged:
“Through this impermissible evidence, the jury learned that the victim’s sister, husband, and daughter came to visit her the evening of the crime while she was at work. They further learned that her daughter wanted to attend church with her aunt, and that the victim agreed to pick her daughter up after church. The victim called her sister’s home that evening before leaving work, and spoke with her father. As was her custom, the victim took scraps of food and put them in her van for her dog. R. 567, 622, 625.”
(Supp. C. 1035.) Hodges also alleged that “[t]rial counsel’s failure to object led to the introduction of evidence that was inadmissible during the guilt/innocence phase, was designed only to inflame the jury’s passions, and denied [Hodges] a fair trial.” (Supp. C. 1036.)
Hodges failed to plead sufficient facts to satisfy Rule 32.3 and Rule 32.6(b). Although he alleged facts regarding the specific arguments and testimony he claimed were improper, he failed to allege any facts indicating how trial counsel’s failure to object to the argument and testimony prejudiced him or indicating that, but for counsel’s failure to object, he would not have been convicted of capital murder. Therefore, summary dismissal of this claim was proper.
Moreover, summary dismissal was proper because the claim was meritless on its face. The testimony offered by the victim’s sister was not offered as victim-impact evidence, but was offered to show the victim’s activities on the day of the murder and when she was last in contact with the family, and it went toward establishing when the crime was committed. The testimony was relevant and the prosecutor’s summarization of the testimony was proper. Counsel had no legal basis for an objection and will not be found to have rendered deficient performance for failing to make a baseless objection. E.g., Hamm v. State, 913 So.2d 460, 490 (Ala.Crim.App.2002). Because this ineffective-assistance claim was meritless on its face, summary dismissal was proper for this additional reason.
L.
Hodges contends that the circuit court erred when it summarily dismissed the claim regarding trial counsel’s failure *950 to object to the testimony of Craig Bailey, a forensic scientist, whom the State failed to qualify as an expert. He alleged that Bailey testified that hairs found in clothing in the victim’s van were similar to the victim’s known hair samples, and that the tire tracks on the victim’s body were similar to the tire tracks made by the victim’s van. He also alleged that “[t]rial counsel’s failure to object to Mr. Bailey’s unqualified expert testimony resulted in the introduction of physical evidence and testimony which prejudiced [Hodges’s] right to a fair trial.” (Supp. C. 1036.)
The claim was properly dismissed because Hodges failed to plead sufficient facts to satisfy the requirements of Rule 32.3 and Rule 32.6(b). Although Hodges alleged that certain “physical evidence” was erroneously admitted, he did not list in the petition any of the items of evidence; therefore, he failed to disclose the full factual basis of the claim. Hodges also failed to allege any specific facts indicating how he was prejudiced by counsel’s failure to object to Bailey’s testimony; instead, he made only a bare allegation that the testimony prejudiced his right to a fair trial. Hodges failed to plead any facts suggesting that, if counsel had objected, the trial court would have sustained the objection and precluded Bailey from testifying and that the absence of that testimony would have resulted in his acquittal. This bare allegation is insufficient to warrant further proceedings and provides ample support for the circuit court’s summary dismissal. E.g., Callahan v. State, 767 So.2d 380, 390 (Ala.Crim.App.1999).
We note, additionally, that the claim was meritless on its face. Although Bailey was not formally tendered to the trial court as an expert, we note that he testified that he had been employed at the Department of Forensic Sciences as at race-evidence examiner, and he testified about his qualifications, as follows:
“I have a Bachelor of Science Degree in Chemistry from the University of Alabama in Birmingham. I also have a couple of graduate courses from that same institution. I was employed in 1971 with the Department. I went through training or internship with that department at that time. I have attended a number of training schools relative to forensic science during the course of my employment with the department both beginning and even present.”
(TR. 938-39.)[8]
Rule 702, Ala.R.Evid., states: “If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.” The Advisory Committee’s Notes to Rule 702 state, in pertinent part: “As under preexisting Alabama law, both questions— whether a witness is qualified as an expert and whether, if so qualified, that witness may give expert opinion testimony on the subject in question — are left largely to the discretion of the trial judge. Hagler v. Gilliland, 292 Ala. 262, 292 So.2d 647 (1974).”
Bailey was qualified to testify as an expert, and there would have been no basis for excluding his testimony. Trial counsel’s performance is not deficient if counsel fails to make an objection that has no legal basis underlying it. E.g., Hamm v. State, 913 So.2d 460, 490 (AIa.Crim.App.2002). Therefore, summary dismissal of this claim was also proper because the claim was meritless.
*951 M.
Hodges contends that the circuit court erred when it dismissed his claim alleging chain-of-custody violations. In the initial paragraph of this claim, Hodges alleged:
“Over 95% of the state’s exhibits admitted by the trial court (other than photographs and diagrams that were authenticated at trial) had a missing link, a weak link or both, including, without limitation, the following exhibits: 17, 18, 20, 21, 29, 31, 32A, 89, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 55, 56, 57, 58, 59, 60, 62, 62A, 62B, 63, 64, 65, 71, 72, 73, 74, 75, 76, 86, 88, 89 and 90. In addition, two exhibits (Exhibits 87 and 90) were admitted without any testimony even identifying them.”
(Supp. C. 1036.) In the remaining paragraphs of the chain-of-custody claim, Hodges discussed the alleged weak or missing links for only a few of the exhibits listed above. With regard to those exhibits that were listed only in the initial paragraph, we find that the claim was properly dismissed because Hodges failed to plead any specific facts regarding any alleged deficiencies in the chain of custody for those exhibits or any specific facts regarding prejudice as to the admission of those exhibits. With regard to the exhibits that Hodges did address specifically, Hodges pleaded some facts about the links in the chain of custody, and he alleged that the exhibits should not have been admitted.
Although Hodges pleaded some facts in support of this claim, we find that he failed to provide the specificity required to satisfy the pleading requirements of Rule 32.6(b). In Bell v. State, 845 So.2d 856 (Ala.Crim.App.2002), we addressed the facts that are required to sufficiently plead a claim involving flaws in the chain of custody. We stated:
“As for the chain-of-custody claim, Bell claims that there was a break in the chain of custody of the cocaine when the cocaine was in the possession of a police officer before the officer deposited the cocaine with the Department of Forensic Sciences. However, Bell does not argue that an objection to the chain of custody would have been sustained. This Court has held evidence to be correctly admitted even when the chain of custody suffers from a weak or missing link. See, e.g., Shute v. State, 469 So.2d 670 (Ala.Crim.App.1984). Additionally, Bell does not allege any tampering with the cocaine by law enforcement, nor does he allege that the substance he was found in possession of differed in any way from the substance submitted as evidence at trial. See generally Ex parte Jones, 592 So.2d 210, 212 (Ala.1991) (‘ “The purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence.’” (quoting Williams v. State, 505 So.2d 1252, 1253 (Ala.Crim.App.1986))). Therefore, ■ he has pleaded facts insufficient to establish that his trial counsel’s assistance was defective and that he was somehow prejudiced by the alleged deficiency. Because Bell failed to state a claim upon which relief could be granted, summary disposition was appropriate.”
Bell, 845 So.2d at 860.
As in Bell, Hodges here failed to plead sufficient facts to satisfy the pleading requirements of Rule 32.6(b). Although Hodges alleged certain breaks in the chain of custody, he failed to allege either that objections to the admission of the exhibits would have been sustained or that there existed any evidence of tampering with any of the items. Because Hodges failed to plead sufficient facts regarding deficient performance or prejudice, the claim was properly dismissed.
*952 N.
Hodges contends that the circuit court erred when it summarily dismissed the claim in his petition in which he alleged that trial counsel failed to adequately cross-examine Trina Eady, a supervisor at the business where Hodges and the victim were employed. Hodges alleged that trial counsel should have followed up on Eady’s testimony that, to her knowledge, Hodges had not previously been in the victim’s van. He alleged that Eady knew that Hodges had been in the van to make deliveries for work and on “many other occasions.” Hodges further alleged:
“Trial counsel’s failure in this regard was made all the worse by the fact that trial counsel specifically stated in opening that the evidence would demonstrate that [Hodges] had been in the van before. R. 574. By failing to make any effort to clarify or impeach Ms. Eady’s contrary testimony on this point, trial counsel allowed the jury to think that he was either incompetent or wrong, thereby undermining his credibility and that of the [Hodges]. Given the importance of credibility to this case, in which two co-defendants offered largely contradictory testimony, there can be no doubt that this failure was of constitutional dimensions.”
(Supp. C. 1041; footnote omitted.)
This claim was due to be summarily dismissed because Hodges failed to plead sufficient facts to satisfy the requirements in Rule 32.3 and Rule 32.6(b). First, Hodges’s claim does not accurately reflect the facts from the trial. Trial counsel did, in fact, ask Eady if Hodges had previously been in the victim’s van and she stated that, to her knowledge, he had not been in the van. (TR. 590.) Hodges failed to plead any facts to indicate what follow-up questions trial counsel should have asked Eady, and he failed to plead any facts indicating that Eady’s answer to those questions would have been different than her original answer to his question.
Furthermore, Hodges failed to plead any specific facts demonstrating that he suffered prejudice as a result of trial counsel’s alleged inadequacies. Although he alleged that trial counsel’s failure “was of constitutional dimensions,” this was a bare allegation that did not warrant additional proceedings. See, e.g., Callahan v. State, 767 So.2d 380, 390 (Ala.Crim.App.1999). To sufficiently plead an allegation of ineffective assistance of counsel under Rule 32.3 and Rule 32.6(b), a petitioner must plead specific facts indicating that there is a reasonable probability that, but for counsel’s actions, the result of the proceeding would have been different. In this context, Hodges was required to plead specific facts indicating that, had counsel asked additional questions on cross-examination, the jury would have found him not guilty. Hodges failed to do so. Therefore, summary dismissal of this claim was proper.
Finally, to the extent Hodges alleged that defense counsel’s failure to ask Eady any follow-up questions undermined his credibility because he had told the jury in opening argument that the evidence would show that Hodges had been in the victim’s van on occasions before the murder, this allegation is meritless on its face. In opening argument, counsel stated the evidence would show that Hodges had been in the van before the murder, but he did not state that Eady would so testify. (TR. 574.) Hodges testified at trial that he had previously been in the victim’s van many times. (TR. 1105-06.) Thus, the evidence was placed before the jury. Summary dismissal of this claim was proper because Hodges failed to plead the claim with the specificity required by Rule 32.3 and Rule 32.6(b), and because the claim was merit-less on its face.
*953 0.
Hodges contends that the circuit court erred when it summarily dismissed the claim in the petition alleging that trial counsel were ineffective for failing to adequately cross-examine codefendant Mario Murph. We disagree. Although the petition contains several specific areas of inquiry that, Hodges claimed, counsel should have pursued with Murph, the petition failed to include any specific facts alleging how counsel’s inaction in that respect resulted in any prejudice. Hodges simply alleged that “[t]he inadequate cross-examination and inadequate use of what evidence was available amounted to ineffective assistance of counsel, and limited the ability of the jury to identify likely motives for false testimony on the part of Murph.” (Supp. C. 1048.) Hodges failed to allege specific facts indicating that there was a reasonable probability that, had trial counsel asked the additional questions on cross-examination, Hodges would not have been convicted of capital murder. Therefore, summary dismissal of this claim was proper.
P.
The circuit court summarily dismissed Hodges’s claim that trial counsel were ineffective for failing to cross-examine an employee of the motel where Hodges took Murph and his girlfriend following the murder. Hodges alleged in the petition:
“Trial counsel failed to cross-examine Muna Patel, an operator of the motel to which Murph and his girlfriend were taken by [Hodges] after the victim had been killed. While the prosecution insinuated at closing that [Hodges] had actually procured the motel room on January 4, 1999, and that he had, therefore, carefully planned and executed this crime, adequate preparation and cross-examination of Ms. Patel would have, and should have, revealed that individuals who check in after midnight typically date their registration statements with the date of the preceding day. Such testimony would have been consistent with [Hodges’s] account of the events of that night, and undermined a significant point alleged by the prosecution in closing.”
(Supp. C. 1043-44.)
Hodges failed to allege specific facts regarding the context of the date, January 4, 1999, and indicating why the date and time of Murph’s check-in was relevant. He also failed to allege any specific facts regarding how trial counsel’s preparation for Patel’s cross-examination was inadequate. Finally, Hodges pleaded no facts, specific or otherwise, indicating how he was prejudiced by counsel’s actions. Therefore, the circuit court properly dismissed this claim.
Q.
Hodges contends that the circuit court erred when it summarily dismissed the claim in the petition that alleged that trial counsel were ineffective for failing to object to questions to numerous witnesses. In a portion of this claim, Hodges quoted 10 questions that he alleged were improper leading questions, and in a footnote he listed the names of additional witnesses and record cites to their testimony. He then alleged:
“Trial counsel failed to object to any of the leading questions quoted above, to the additional questions listed in footnote 7, or to essentially any other questions. The prosecution’s case was riddled with leading questions, but trial counsel objected only eight times (and then, primarily only after the Court sua sponte inserted itself into the proceeding and cautioned the prosecution). Trial counsel’s failure to object to leading questions deprived [Hodges] of a fair trial. Counsel’s failure to object to lead *954 ing questions facilitated the admission of testimony and various pieces of evidence to [Hodges’s] substantial detriment.”
(Supp. C. 1048.)
Hodges failed to comply with the specificity and pleading requirements of Rule 32.6(b). First, as to the list of names and record citations in the footnote of the claim, this portion of the claim was clearly not adequately pleaded because there is no indication of what questions on those pages Hodges now alleges were leading and should have been objected to by trial counsel. Furthermore, as to the remaining allegations, Hodges failed to plead any facts regarding the context of any of the questions, and he failed to allege that any evidence or testimony would not otherwise have been admitted through non-leading questions. Finally, Hodges failed to plead any specific facts to indicate that he was prejudiced by counsel’s failure to object. He merely argued that admission of testimony and evidence was “facilitated” by counsel’s failure to object, and that the admission of this testimony and evidence operated to his “substantial detriment.” This allegation does not satisfy the pleading requirement for prejudice in an ineffective-assistance-of-counsel claim. To warrant further proceedings, Hodges had to plead specific facts indicating that, but for counsel’s failure to object, the result of the proceeding probably would have been different; he failed to do so. Therefore, summary dismissal of this claim was proper.
Finally, we note that the claim was mer-itless on its face. This Court has held that “[t]rial counsel’s failure to object to a leading question is not of itself inadequate representation.” Johnson v. State, 557 So.2d 1337, 1339 (Ala.Crim.App.1990). Therefore, summary dismissal was proper for this reason as well.
R.
Hodges contends that the circuit court erred when it summarily dismissed the claim in the petition alleging that trial counsel were ineffective for failing to object to the prosecutor’s alleged “intimidation” of a witness. Hodges alleged in the petition:
“Kitty Porter, [Hodges’s] aunt, testified as a prosecution witness. During trial counsel’s cross-examination of Ms. Porter, and just as trial counsel was beginning to make some headway with the cross-examination, District Attorney Ab-bett left the prosecution table and stood between trial counsel and the witness. Trial counsel failed to object to Mr. Ab-bett’s conduct. The trial court stated, ‘Mr. Abbett, don’t walk between those— the interrogator and the witness, please.’ R 984. Mr. Abbett persisted in advancing on the witness during trial counsel’s cross-examination of Ms. Porter, and trial counsel still did not object. The trial court stated, ‘You are standing between the juror and the witness. Why don’t you have a seat over here at counsel table?’ R. 984. The prosecution’s conduct intimidated Ms. Porter, prevented her from testifying fully and accurately, and impeded trial counsel’s cross-examination of her. Trial counsel’s failure to object denied [Hodges] effective assistance of counsel.”
(Supp. C. 1046.)
In dismissing this claim, the circuit court stated:
“Hodges has failed to specify how he was prejudiced by the prosecutor’s allegedly improper actions. Hodges has not identified how cross-examination of Ms. Porter was impeded or how Ms. Porter was prevented from testifying truthfully or completely. Hodges has not even identified the ways in which her testimony would have been different. Accord *955 ingly, this claim is summarily dismissed for failure to comply with the specificity and full factual pleading requirements of Rule 32.6(b). Ala.R.Crim.P. 32.7(d).”
(Supp. C. 820-21.)
We agree with the circuit court’s findings and adopt them as our own. Not only did Hodges fail to plead any specific facts indicating how he was prejudiced by counsel’s failure to object, it appears that no objection was necessary because the trial court resolved any potential problem by instructing the prosecutor to sit down. There being no reason for trial counsel to object, there could be no deficient performance. Thus, the claim was properly dismissed.
S.
The circuit court dismissed the claim in the petition alleging that counsel were ineffective for failing to object when the prosecutor allegedly misled the jury by stating that human blood had been found on Hodges’s watch and ring. He alleged that the State presented no testimony at trial that the blood found on the watch and ring was human, and that “[t]rial counsel’s failure to object allowed the prosecution to mislead jurors by suggesting that the victim’s blood was on [Hodges’s] hands, and denied [Hodges] his right to a fair trial.” (Supp. C. 1047.)
The claim lacked the full disclosure of the factual basis for the grounds of ineffective assistance of counsel. Hodges made only a bare allegation that his right to a fair trial had been denied, and he pleaded no specific facts to show that, if trial counsel had objected, the objection would have been sustained; he also failed to plead any facts indicating that, even if the objection had been sustained, the result of the proceeding would have been different—that is, that the jury would not have found him guilty of capital murder. Therefore, the claim was properly dismissed.
Furthermore, testimony at trial established that the clothes Hodges was wearing at the time of the crime had blood on them that matched the victim’s DNA. The prosecutor could reasonably infer that the blood on Hodges’s watch and ring was human. Because counsel is permitted to make reasonable inferences from the evidence in closing arguments, see Bonner v. State, 921 So.2d 469, 472 (Ala.Crim.App.2005), trial counsel would have had no basis for an objection. Finally, the trial court instructed the jurors repeatedly that the arguments of counsel were not evidence. (TR. 565-56, 1136-37, 1163.) Therefore, this claim was meritless on its face, and summary dismissal was also proper on this ground.
T.
Hodges contends that the circuit court erred when it summarily dismissed the claim in his petition alleging that trial counsel were ineffective for failing to object to the prosecutor’s alleged misstatement of the law during closing argument. Specifically, he alleged that trial counsel should have objected when the prosecutor failed to inform the jury that the capital-murder statute “prohibits an individual from being found guilty of capital murder if that individual in fact did not conduct the killing,” and that counsel should have demanded that the trial court instruct the jury on that legal principle. (Supp. C. 1048.) The trial court dismissed this claim on the ground that it failed to state a material issue of fact or law that would have entitled Hodges to relief. The court stated:
“Hodges alleges that counsel was ineffective for failing to object because under Alabama law you cannot be found guilty of capital murder unless you actually conduct the killing of the victim. (Pet. At 65, ¶ 239) Hodges contends that under Ala.Code 13A-5-40(c), one cannot *956 be convicted of capital murder unless he or she personally killed the victim. Hodges’s assertion is blatantly incorrect. Ala.Code 13A-5-40(c) reads as follows:
“ ‘A defendant who does not personally commit the act of killing which constitutes the murder is not guilty of a capital offense defined in subsection (a) of the section unless that defendant is legally accountable for the murder because of complicity in the murder itself under the provisions of Section 13A-2-23, in addition to being guilty of the other elements of the capital offense as defined in subsection (a) of this section.’
“Ala.Co'de 13A-5-40(c). In pleading this claim, Hodges conveniently ignored the portion of the statute that explicitly states that a person can be found guilty of capital murder under the theory of complicity. As the prosecutor’s argument was legally correct, trial counsel cannot be found ineffective for failing to object. Moreover, at the close of testimony during the guilt phase, this Court instructed the jury as to the law of the case:
‘“All right. At this point you have heard all the evidence and it’s my duty now to tell you what the law is that you have — that you apply to what you have heard.’
“(R. 1153) This Court explained that:
“ ‘To convict the defendant of capital murder the State must prove beyond a reasonable doubt each of the following elements of an intentional murder during a robbery in the first degree, and there are seven of these.
“ ‘Number one: That Elizabeth Seaton is dead.
“ ‘Number two: That the Defendant Melvin Hodges caused the death of Elizabeth Seaton by striking her with a vehicle. That is the charge in the indictment.
“‘Number three: That in committing the acts which caused her death, the Defendant intended to kill the deceased.
“ ‘A person acts intentionally when it is his purpose to cause the death of another person. The intent must be real and specific.’
“(R. 1156-1157) Jurors are presumed to follow the trial court’s instructions. Harrison v. State, [869 So.2d 509] (Ala.Crim.App.2002). This Court’s instructions were thorough and accurate. Accordingly, this claim is summarily dismissed for failure to raise a material issue of law or fact that would entitle the petitioner to relief. Rule 32.7(d).”
(Supp. C. 852-54.)
While we do not mean to be understood as holding that the claim was sufficiently pleaded, we need not address that issue because we hold that the circuit court correctly dismissed the claim on the ground that it failed to raise a material issue of law or fact that would entitle Hodges to relief.
U.
The circuit court summarily dismissed the claim that alleged that trial counsel were ineffective because they did not attempt to persuade the jury to consider returning a verdict on manslaughter, in part because the trial court decided only during trial counsel’s closing argument that it would instruct the jury on manslaughter. In a related claim, Hodges alleged that trial counsel were ineffective for failing to object to the trial court’s untimely notification about the jury instruction and for failing to request a continuance so they could make “an essential argument that [Hodges] should have been convicted of manslaughter rather than capital murder.” (Supp. C. 1053.) Hodges argues that the summary dismissal of these claims was error; we disagree.
*957 After pleading facts regarding the trial court’s initial decision not to give a manslaughter instruction and its later decision to do so, Hodges stated that trial counsel informed the jurors that the court would be instructing them on manslaughter and that the charge would be related to Hodges’s alcohol and marijuana consumption. Hodges alleged that” [cjounsel failed to even attempt to persuade the jury to consider returning a verdict of guilty on voluntary manslaughter.” (Supp. C. 1050.) Hodges then alleged: '
“Rather than advancing [Hodges’s] case, trial counsel’s confused and offhand presentation of the manslaughter charge served only to convince the jury that the charge was not worthy of serious attention. Trial counsel’s failure to seriously advocate one of the lesser included offenses instructed by the judge deprived [Hodges] of a fair trial.”
(Supp. C. 1050.)
Hodges failed to provide any specific facts to support this claim of ineffective assistance of counsel. He did not allege exactly what arguments counsel should have made in light of the evidence presented at trial and in light of Hodges’s theory of defense. Hodges also failed to plead any facts alleging prejudice, that is, indicating that, if counsel had made those arguments to the jury, the jury would have found him guilty of manslaughter.
As to the claim that counsel should have objected to the court’s delayed announcement that it would give the manslaughter instruction to the jury and should have requested a continuance, Hodges again failed to plead facts indicating what arguments counsel should have made, in light of the evidence and Hodges’s theory of defense. He also failed to plead any facts alleging prejudice or indicating that, but for counsel’s failures, he would have been convicted of manslaughter.
Hodges made only bare allegations of error and conclusions that his right to a fair trial was denied. These claims were insufficiently pleaded and were, therefore, properly dismissed by the circuit court.
V.
Hodges alleged in the petition that trial counsel were ineffective for failing to object when the trial court noted that the prosecution had failed to link him to the bloody pants Mario Murph found, which allowed the prosecution to follow up with a question providing the link to Hodges. Hodges alleged:
“This interference with the advocacy process was wholly unjustified, and demonstrated the judge’s bias. [Hodges’s] trial counsel’s failure to object to the Court’s prompting was demonstrably ineffective, and that ineffectiveness further manifested itself when [t]rial counsel failed to cross-examine Murph at all regarding the basis for his recollection about the pants. These failures substantially prejudiced Petitioner, denying him effective representation and a fair trial.”
(Supp. C. 1051.)
This claim was due to be dismissed because Hodges failed to plead any specific facts to support the claim. He did not indicate what grounds counsel should have raised if they had objected or that any objection would have been sustained, and he failed to allege that if counsel had objected the result of the proceeding probably would have been different. Because Hodges made only bare allegations in the petition, he failed to satisfy the specificity and pleading requirements of Rule 32.8 and Rule 32.6(b); therefore, the claim was properly dismissed.
*958 W.
The circuit court summarily dismissed Hodges’s claim that trial counsel were ineffective for failing to object when the trial court instructed him to stop making statements and to simply answer the questions he was asked. Hodges quoted the interchange between the court, Hodges, and trial counsel, and then alleged that the interchange “would necessarily have affected the jury’s perception of [Hodges’s] cooperativeness, his intelligence, and his truthfulness. Yet trial counsel failed to object at all.” (Supp. C. 1052.) This claim lacked any specific facts regarding prejudice allegedly suffered as a result of trial counsel’s failure to object. Hodges alleged nothing to suggest that, if counsel had objected to the trial court’s remarks, the result of the proceeding probably would have been different. Furthermore, we note that the claim was meritless on its face. The portion of the record quoted in the petition indicates that Hodges made an unsolicited comment to the prosecutor, then asked the court if he could make a statement. The trial court is vested with much discretion to control the proceedings in its courtroom and to ensure that proper decorum is maintained. E.g., Smith v. State, 838 So.2d 413, 451-52 (Ala.Crim.App.2002). The trial court’s instruction to a witness regarding answering questions and not making unsolicited statements was well within the trial court’s discretion here. There being no valid basis for an objection by trial counsel, there could be no finding of deficient performance. See, e.g., Hamm v. State, 913 So.2d 460, 490 (Ala.Crim.App.2002). Thus, this claim was properly dismissed.
X.
In the petition, Hodges alleged that trial counsel were ineffective because they did not object to the trial court’s failure to instruct the jury on the lesser-included offense of robbery. Hodges alleged, in pertinent part:
“[Hodges’s] entire case, and his entire testimony, was based on his statements that while he had helped to plan the robbery, the planning for that robbery never involved and actually took steps in order to avoid injury to the victim. Furthermore, [Hodges] withdrew from participation on the evening of January 4, and only learned about the death of Ms. Seaton from Murph later the next morning. His testimony provided a more than adequate basis upon which the jury could have rested a verdict of ‘guilty’ solely on a count of robbery, in that he alleged that he simply had no involvement in the murder itself, and that the killing took place well after the time of the robbery (therefore making felony murder unavailable). The trial court, however, refused to give the robbery instruction. In doing so, the trial court forced the jury to either find [Hodges] ‘not guilty,’ or to convict him of murder. This was no choice at all for the jury, which had, after all, heard [Hodges] admit to being involved in the planning of the robbery.”
(Supp. C. 1053; emphasis added.)
This claim was properly dismissed because it was not pleaded with sufficient specificity to satisfy the requirements of Rule 32.3 and Rule 32.6(b). We note, first, that Hodges’s claim is misleading. He stated in the petition that a felony-murder conviction was “unavailable” based on the facts and implied that a felony-murder instruction was not given to the jury. The record belies this allegation. The trial court instructed the jury on felony-murder. Hodges, 856 So.2d at 925. Because the trial court instructed the jury on a lesser-included offense and the jury found Hodges guilty of the greater offense of capital murder, Hodges could establish no *959 prejudice as a result of counsel’s failure to object to the jury charge. Even if a robbery instruction had been given to the jury, the jury clearly would have rejected it and convicted Hodges of capital murder because the jury had the option of convicting him of felony-murder for an unintended death during the commission of a robbery, and instead it convicted him of the greater offense of capital murder. Cf. Lewis v. State, 889 So.2d 623, 688 (Ala.Crim.App.2003)(any error in failing to instruct the jury on the lesser-included offenses of kidnapping, rape, and robbery “was harmless because the jury was charged on the lesser-included offenses of intentional murder, felony murder, and manslaughter, and the jury found Lewis guilty of the greater capital offenses”). Clearly, Hodges could not establish prejudice as a result of counsel’s failure to object to the trial court’s decision not to instruct the jury on robbery. Because Hodges failed to plead any facts to show prejudice as a result of trial counsel’s actions, summary dismissal of this claim was proper.
Y.
Hodges alleged in the petition that trial counsel were ineffective because counsel failed to investigate whether he was incompetent to stand trial and whether he was competent at the time of the crime. In dismissing this claim, the circuit court stated in its order:
“Hodges has failed to allege specific facts in support of this claim in his petition, nor has he demonstrated that he was prejudiced by trial counsel’s alleged failure to investigate his competency. Hodges does not include any facts indicating that he was incompetent to stand trial. In fact, Hodges fails to even assert that he was incompetent at the time of the crime or at trial. Instead, Hodges merely contends that trial counsel was ineffective for failing to determine his competency without any substantive claim of incompetency. Accordingly, this claim is summarily dismissed for failure to comply with the specificity and full factual pleading requirements of Rule 32.6(b). Ala.R.Crim.P. 32.7(d).”
(Supp. C. 911.)
We agree with the circuit court’s findings and conclusions and adopt them as our own. Hodges is not entitled to any relief on this claim. See Heidelberg v. State, 965 So.2d 799 (Ala.Crim.App.2006) (claim was held to be sufficiently specific when the petition alleged that counsel was ineffective for failing to investigate petitioner’s competency to plead guilty because he was under the influence of mind-altering medication at the time he entered his guilty plea and averred that he had a history of mental illness and that he was “legally incompetent” when he entered his guilty plea).
Z.
Hodges contends that the circuit court erred when it summarily dismissed the claim that appellate counsel was ineffective. Summary dismissal was proper because Hodges failed to plead sufficient facts to satisfy the requirements of Rule 32.3 and Rule 32.6(b). Although Hodges mentions appellate counsel’s failure to provide this Court on direct appeal “with an adequate basis upon which to assess the chain of custody problems” (Supp. C. 1060), he alleges no facts to indicate how counsel’s performance was deficient or what arguments counsel should have made.
Hodges also alleged:
“Furthermore, to the degree that any of the issues presented in this petition are issues that could or should have been, but were not, adequately raised and presented on appeal, the failure to do so amounts to inadequate representa *960 tion of appellate counsel. The failure to present these meritorious claims was necessarily prejudicial, since if they had been raised, there would have been a reasonable probability that the outcome would have been different for the reasons stated in association with each of these claims.”
(Supp. C. 1060.) This claim contained no factual allegations to support either the allegation of deficient performance or prejudice. It contained bare allegations and legal conclusions, and was, thus, properly dismissed.
AA.
Throughout the petition, often at the conclusion of a substantive claim, Hodges included a broad, “catchall” allegation of ineffective assistance of trial and/or appellate counsel. For example, within the allegation in Claim III.F. regarding prosecu-torial misconduct for failing to reveal the alleged mishandling of evidence, Hodges alleged:
“[Tjrial counsel’s failure to identify this misconduct (to the degree that it could have been discovered at the trial phase), and appellate counsel’s failure to raise the issue on direct appeal, amounted to ineffective assistance of trial and appellate counsel. The failings deprived [Hodges] of his due process rights under the state and federal constitutions.”
(Supp. C. 1073.)
In a footnote in that claim of his petition alleging that the prosecutor misstated the evidence, Hodges alleged that on direct appeal, this Court’s analysis of the issue had been incorrect and he further alleged that “[a]ppellate counsel’s failure to point this out amounted to ineffective assistance of appellate counsel.” (Supp. C. 1074, n. 8.)
In the introductory paragraph in Claim V, which alleged that the trial court exhibited bias during pretrial and trial proceedings, Hodges also alleged:
“The evidence of bias outlined below is not merely evidence of bias; each of the rulings and approaches by the trial court is in itself a violation of [Hodges’s] rights under the federal and state constitutions, and the failure of the trial counsel to adequately object to these rulings, and/or to proffer evidence to counteract them, amounts to ineffective assistance of counsel.”
(Supp. C. 1078.)
In an argument in Claim VI regarding an alleged error in the indictment, Hodges alleged that “[t]o the degree that the previous argument was not raised by trial counsel or by appellate counsel on direct appeal, the failure to raise it amounts to ineffective assistance of counsel that would, if corrected, have likely resulted in a different outcome at trial or on appeal.” (Supp. C. 1084.)
In a claim alleging that his right to an impartial jury was violated, Claim VII, Hodges also alleged:
“These flaws merit reversal in and of themselves, but if they are deemed to have been procedurally waived because they have not, and should have, been previously addressed at trial or on direct appeal, the failure to raise these concerns amounts to the ineffective assistance of trial and appellate counsel, since if properly raised, they would have merited reversal or altered the impropriety at the outset of the case.”
(Supp. C. 1086.)
In Claim IX, which alleged that Alabama’s death-penalty sentencing scheme is unconstitutional for many reasons, Hodges also alleged in the opening paragraph:
“To the degree that any of these claims are not considered on their direct merits because they were not adequately raised *961 at trial or on direct appeal (see, in particular, the failure to object regarding the matters raised infra at Part IX.K., noted at 856 So.2d at 947), the failure to raise these claims effectively was the result of the ineffective assistance of trial and/or appellate counsel, and that failure seriously prejudiced [Hodges’s] claims at trial and on direct appeal, since an adequate argument on these claims would have had a significant probability of success.”
(Supp. C. 1092.)
The above-quoted claims, and the many others like them throughout the petition, all clearly failed to satisfy the pleading requirements of Rule 82.3 and Rule 32.6(b). Although some of the claims contained factual allegations regarding underlying substantive issues, they all failed to contain any specific factual allegations about what trial or appellate counsel should have argued and they failed to contain any specific factual allegations indicating that, if trial or appellate counsel had acted differently, the result of the proceeding probably would have been different.
In Boyd v. State, 746 So.2d 364 (Ala.Crim.App.1999), this Court was confronted with a similar situation, although in the context of “catchall” issues in an appellate brief. We stated:
“Boyd contends that trial counsel failed to properly prepare, investigate or pursue an effective defense on his behalf. Other than Boyd’s reference to substantive issues XV, XVI, and XVII, this claim consists of a list of the ‘plethora of errors regarding the presentation of the defense case individually and collectively [that] denied Mr. Boyd the effective assistance of trial counsel.’ (Appellant’s brief at p. 31.)
“ ‘This “grocery list” of counsel’s alleged failures is totally useless because it represents only legal conclusions unsupported by specific facts.... “A petition is ‘meritorious on its face’ only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true.” ’
“Hope v. State, 521 So.2d 1383, 1389 (Ala.Cr.App.1988) (quoting Moore v. State, 502 So.2d 819, 820 (Ala.1986)).”
Boyd, 746 So.2d at 400-01.
As in Boyd and in Hope v. State, 521 So.2d 1383 (Ala.Crim.App.1988), we find that all of the allegations of ineffective assistance of counsel that were included, seemingly as mere addenda, in claims alleging other errors were properly summarily dismissed because they failed to satisfy the pleading requirements of Rule 32.
VI.
Hodges contends that this case must be remanded because, he says, the circuit court’s final order dismissing his Rule 32 petition, issued on February 16, 2005, contains insufficient detail and because, he says, the court purported to rely on its independent recollection of the trial to dismiss claims that, in fact, were beyond circumstances the trial court could have observed at trial. Specifically, Hodges argues that as to claims of ineffective assistance of counsel regarding the inadequate investigation and presentation of mitigating circumstances, the circuit court could not have an independent recollection of trial counsel’s investigation of the case and it could not have known what actions trial counsel took or did not take in preparation for the trial. The State concedes that the circuit court’s one-page order was insufficient and alleges that the case is due to be *962 remanded for a more specific order. In addition to claims I.H. and I.U., which alleged that trial counsel failed to conduct an adequate mitigation investigation and failed to adequately present mitigation evidence at the penalty phase, the State lists several other claims that, it argues, the circuit court should not have summarily dismissed.
The procedural history of this case shows that on December 1, 2004, the circuit court granted the State’s initial motion to dismiss and filed an extensive order summarily dismissing many of the claims raised in Hodges’s petition. On January 19, 2005, the State filed a motion to schedule an evidentiary hearing on those claims not dismissed by the circuit court’s December 1, 2004, order. On January 26, 2005, the circuit court ordered that an evidentia-ry hearing be held on March 29, 2005. On February 10, 2005, the State filed a second motion for summary dismissal, seeking dismissal of four claims on the ground that the claims did not raise material issues of law or fact. On February 16, 2005, the circuit court entered a brief order denying the amended petition in its entirety. The circuit court’s final order stated, in pertinent part:
“After careful review of the materials submitted, the Court finds that the matters raised in the Amended Petition are insufficient to warrant the requested relief.
“The thrust of the Amended Petition is that trial counsel for [Hodges] was inadequate in several respects. The Court has an independent recollection of the trial of this case. The representation provided by trial counsel was adequate in every respect and met the full requirements of the law with respect to adequate representation.
“Accordingly, the Amended Petition pursuant to Rule 32 is summarily DENIED.
“The Court further orders that the hearing previously set for March 29, 2005, is cancelled.”
(Supp. C. 1217.)
We have often stated that the judge presiding over the postconviction proceedings may deny claims based on his personal knowledge. In Sheats v. State, 556 So.2d 1094, 1095 (Ala.Crim.App.1989), we stated that “[i]f the circuit judge has personal knowledge of the actual facts underlying the allegations in the petition, he may deny the petition without further proceedings so long as he states the reasons for the denial in a written order.” See also Dobyne v. State, 805 So.2d 733, 740-41 (Ala.Crim.App.2000), and Payne v. State, 791 So.2d 383, 394 (Ala.Crim.App.2000).
The parties agree that, to the extent the circuit court relied on its personal knowledge to dismiss the claims, it should have stated its reasons in the order. Several of the claims that the circuit court dismissed in the final order, though not accompanied by specific reasons in the order, were properly dismissed on other grounds, and we have discussed those claims in earlier portions of this opinion. Remand for specific findings by the circuit court as to those claims is not required. See, e.g., Hunt v. State, 940 So.2d 1041, 1049 (Ala.Crim.App.2005) (if the circuit court is correct for any reason, even if it is not the reason stated by the court, this Court will not reverse the denial of the petition).
However, Hodges’s allegations that trial counsel were ineffective for failing to conduct an adequate mitigation investigation and for not presenting the mitigation evidence they should have discovered are not matters about which the circuit court could be expected to have personal knowledge of the actual facts underlying those claims. As to those claims, the circuit court erred in relying on its personal knowledge of the facts without stating its reasons in the *963 order. Furthermore, it appears that the claims regarding the mitigation investigation are facially meritorious and were pleaded with sufficient specificity. Hodges alleged that his trial counsel were ineffective for failing to conduct an adequate mitigation investigation to discover the aspects of his character and history and life circumstances that could be presented to the jury. See § 13A-5-52, Ala.Code 1975. He alleged that, if counsel had conducted the necessary investigation and presented the resulting mitigation evidence at the penalty phase, more than eight jurors might have been persuaded to vote for a sentence of life imprisonment without parole. He further alleged that, because a jury recommendation of life imprisonment without parole is a mitigating circumstance in the trial court’s sentencing decision, see Ex parte Carroll, 852 So.2d 833, 836 (Ala.2002), if more jurors had voted for a sentence of life imprisonment without parole, the trial court might have been persuaded to follow the jury’s recommendation. Hodges also alleged that trial counsel’s failure to present the substantial mitigation evidence could not be considered a strategic decision because it was not based on a reasonable investigation. See Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).
In Ex parte Carroll, the Alabama Supreme Court explained the effect of a jury’s recommendation of life imprisonment without parole. It stated:
“The weight to be given that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the identity of the ‘triggerman’ or a recommendation of leniency by the victim’s family; the jury’s recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.”
Ex parte Carroll, 852 So.2d at 836. Thus, Hodges correctly alleged that, if more jurors had recommended a life-without-parole sentence upon hearing additional mitigating circumstances, that recommendation would have been entitled to even more weight in the trial court’s consideration of the aggravating and mitigating circumstances.
In Claims I.H. and I.U. in his petition, Hodges alleged specific facts indicating that counsel failed to investigate and present the following mitigation: that Hodges had been exposed to continuous and extreme violence during his childhood; that alcohol and drug abuse plagued Hodges and his family; that Hodges had been raised in extreme poverty; that Hodges had been repeatedly abandoned and had had no male role model; that Hodges had been constantly moved from one unstable home to another; and that Hodges had attempted to lead a positive life in the year before the murder. (Supp. C. 100926, 1054-58.)[9] We agree with Hodges that it is not plausible that the circuit court could have had personal knowledge of the facts underlying any of these claims of ineffective assistance based on the court’s recollection of the trial proceedings.
Furthermore, we note that the factual allegations in the claims listed the kind of evidence the United States Supreme Court *964 has recognized as mitigating. In Williams v. Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court found that trial counsel’s performance at trial had been ineffective because they failed to adequately investigate and present significant mitigating evidence to the jury. The Court stated:
“They failed to conduct an investigation that would have uncovered extensive records graphically describing Williams’ nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records. Had they done so, the jury would have learned that Williams’ parents had been imprisoned for the criminal neglect of Williams and his siblings, that Williams had been severely and repeatedly beaten by his father, that he had been committed to the custody of the social services bureau for two years during his parents’ incarceration (including one stint in an abusive foster home), and then, after his parents were released from prison, had been returned to his parents’ custody.
“Counsel failed to introduce available evidence that Williams was ‘borderline mentally retarded’ and did not advance beyond sixth grade in school. ... They failed to seek prison records recording Williams’ commendations for helping to crack a prison drug ring and for returning a guard’s missing wallet, or the testimony of prison officials who described Williams as among the inmates ‘least likely to act in a violent, dangerous or provocative way.’ ... Counsel failed even to return the phone call of a certified public accountant who had offered to testify that he had visited Williams frequently when Williams was incarcerated as part of a prison ministry program, that Williams ‘seemed to thrive in a more regimented and structured environment,’ and that Williams was proud of the carpentry degree he earned while in prison.”
Williams v. Taylor, 529 U.S. at 395-96 (footnote omitted). Many of the factual allegations in Hodges’s petition refer to information like that in Williams v. Taylor.
Because Hodges’s claims were sufficiently pleaded and unrefuted by the State, they must be accepted as true, and Hodges is entitled to an opportunity to present evidence to prove the claims. See, e.g., Butler v. State, 942 So.2d 389, 392 (Ala.Crim.App.2005). Therefore, we must remand this case for the circuit court to allow Hodges an opportunity to present evidence in support of these claims of ineffective assistance of counsel. See Part XI of this opinion.
VII.
Hodges contends that he should have been permitted to amend his petition and that the circuit court abused its discretion when it failed to provide that opportunity.
Initially, we note that Hodges states that he “notified the Circuit Court, see SC1159-60, that he would amend the petition to provide further detail on any claims that the Court proposed to dismiss.... ” (Hodges’s brief at p. 94.) The page numbers he cited, however, are the signature page and certificate of service for Hodges’s February 16, 2005, opposition to the State’s second motion to dismiss and do not mention a proposed amendment. Thus, Hodges has failed to provide a record cite to direct our attention to the alleged error.
In any event, our review of the record discloses that, in a January 5, 2005, memorandum Hodges filed in support of a motion to reconsider the circuit court’s December 1, 2004, order dismissing many *965 of the postconviction claims, Hodges stated that he intended to amend the petition and requested leave to amend the petition. (Supp. C. 1080-81.) Hodges argues that he should have been allowed to amend his petition because leave to amend is to be freely granted. Rule 32.7(d), Ala.R.Crim. P., provides, in pertinent part, that “[l]eave to amend shall be freely granted.” However, Rule 32.7(b), Ala.R.Crim.P., provides that “[ajmendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment.” (Emphasis added.) The claims that Hodges sought to amend had already been dismissed by the circuit court in its December 1, 2004, order. An amendment is to be freely granted “ ‘ “if it is necessary for a full determination on the merits” ’ ” of the claims. Talley v. State, 802 So.2d 1106, 1107-08 (Ala.Crim.App.2001), quoting Cochran v. State, 548 So.2d 1062, 1075 (Ala.Crim.App.1989), quoting in turn Record Data Int'l, Inc. v. Nichols, 381 So.2d 1, 5(Ala.1979), and quoted with approval in Ex parte Rhone, 900 So.2d 455, 458 (Ala.2004). No amendment to the claims was necessary for a full determination of these claims because they had already been dismissed. Therefore, the circuit court did not abuse its discretion when it denied Hodges’s request to amend the petition.
VIII.
Hodges contends that the circuit court erred when it denied a motion seeking discovery of “prosecution files, records, and information necessary to a fair Rule 32 evidentiary hearing.” (Supp. C. 715-31.)[10] In the motion, Hodges relied on a variety of legal authorities including Ex parte Monk, 557 So.2d 832 (Ala.1989), Ex parte Land, 775 So.2d 847 (Ala.2000), Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Rule 16, Ala.R.Crim.P. In support of his broad claims for discovery, Hodges made the following allegations:
“The Petition sets forth detailed and extensive claims regarding the ineffectiveness of trial counsels’ representation of [Hodges] at both the guilt and penalty phases of [Hodges’s] trial for capital murder. Among the claims is the trial attorneys’ failure ... ‘to conduct thorough and independent investigations relating to the issues of both guilt and penalty.’ See Revised ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.7 (Feb.2003). This requirement is a touchstone for what amounts to ‘reasonable’ representation under prevailing professional norms. See, e.g., Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 2536 (2003)(citing Strickland, 466 U.S., at 688-689); Cone v. Bell, 359 F.3d 785, 803-05 (6th Cir.2004) (Merritt, J., concurring). The discovery requested below falls well within the scope of information that should have been investigated by trial counsel at the guilt and penalty phases of the case, and is likely to lead to the discovery of relevant in formation regarding the petition, and particularly the claims of ineffective assistance of counsel, pros-ecutorial misconduct, and innocence.”
(Supp. C. 715-16; emphasis added.) Hodges then requested a vast array of documents and information, using very vague and broad terms in his requests. Section III.A. of the motion was directed to the Lee County District Attorney’s Office and the Lee County Sheriffs Depart *966 ment, and in that section Hodges listed 30 paragraphs of broad requests for documents and other information, many of which contained subparagraphs. For example, in paragraph 23 of the motion, he sought “[a]ll documents relating to any communication relating to the crimes and related circumstances at issue in this case. Such communications specifically include, but are not limited to, those communications made by or to any of the following. ...” and he listed 32 names, including his own. (Supp. C. 721.) In paragraph 26, Hodges requested “[a]ll documents relating to [the victim], including but not limited to information pertinent to her location, intent, or mental or physical condition at any time.” (Supp. C. 722.) In paragraph 35, Hodges requested the following:
“All physical or documentary evidence, including diagrams, sketches, books, papers, documents, photographs, illustrations, or tangible objects in the possession of the prosecution, law enforcement personnel, any other State agency, or prosecution witness that may have impeached or otherwise contradicted, disproved, questioned, conflicted with, or challenged the testimony of any State witness or individual interviewed by the State, including, but not limited to, Rick Gaught, Ben Bugg, Ronald Robertson, Terrance McMennamin, Clint Davis, David Arwood, Allen Moore, Tony Brooks, Marvin Crayton, Anthony Frost, James Sparrow, Richard Roper, James Lauridson, Hal Bentley, Charles Wright, Carol Curlee, Michael Hitchcock, Joe Saloom, Angelo Della Manna, Craig Bailey, Greg Holstick, Mario Murph, and any other individual that may have information relating to the crimes and related circumstances at issue in this case, and to Mr. Hodges’s prosecution for those crimes.”
(Supp. C. 724-25.)
In section III.B. of the motion, Hodges made the same 30 paragraph request of the Lee County district and circuit courts; in section III.C. of the motion, he made the same 30 paragraph request of the Macon County Sheriffs Department, the Ope-lika Police Department, and the Macon County coroner; in section III.D. of the motion, he made the same 30-paragraph request of the Alabama Bureau of Investigation and the Alabama Department of Forensic Sciences; in section III.E. of the motion, he made the same 30-paragraph request of Bryce Hospital and Taylor Hardin Secure Medical Facility; in section III.F. of the motion, he made the same 30-paragraph request of the Alabama Department of Youth Services and the Frank Lee Youth Center. (Supp. C. 728-29.) In the final paragraph of the motion, Hodges requested that the circuit court “issue an order directing any other institution or individual within the State of Alabama whose actions are in any manner controlled by, or that would be deemed to be acting in any manner as an employee, agent, instrumentality, or representative of the State” to disclose to counsel all materials listed in the 30-paragraph request in section III.A. of the motion. (Supp. C. 730.)
We note, first, that discovery in Rule 32 cases is not, as Hodges seems to suggest, governed by Ex parte Monk, 557 So.2d 832 (Ala.1989), Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or Rule 16, Ala.R.Crim.P. Rather, discovery in postconviction proceedings is governed by the principles set forth in Ex parte Land, 775 So.2d 847 (Ala.2000), in which the Alabama Supreme Court adopted a “good cause” standard for discovery in Rule 32 proceedings. The Court stated:
“We emphasize that this holding— that postconviction discovery motions are to be judged by a good-cause standard — does not automatically allow discovery under Rule 32, Ala.R.Crim.P., and that it does not expand the discov *967 ery procedures within Rule 32.4. Accord [State v. Lewis, 656 So.2d 1248, 1250 (Fla.1994)], wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida’s rules relating to postconviction procedure, which are similar to ours. By-adopting this standard, we are only recognizing that a trial court, upon a petitioner’s showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to ‘fish’ through official files and that it ‘is not a device for investigating possible claims, but a means of vindicating actual claims.’ People v. Gonzalez, 51 Cal.Bd 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir.1986) (‘a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal ha-beas relief), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), Ala.R.Crim.P., which states:
“ ‘The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.’ ”
Ex parte Land, 775 So.2d at 852-53.
In Ex parte Mack, 894 So.2d 764 (Ala.Crim.App.2003), overruled in part on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005), this Court examined the “good cause” standard. We quoted from People v. Johnson, 205 Ill.2d 381, 275 Ill.Dec. 820, 793 N.E.2d 591 (Ill.2002):
“ ‘A court must exercise this authority [to order discovery] with caution, however, because a defendant may attempt to divert attention away from constitutional issues which escaped earlier review by requesting discovery. ... Accordingly, the trial court should allow discovery only if the defendant has shown “good cause, ” considering the issues presented in the petition, the scope of the requested discovery, the length of time between the conviction and the post-conviction proceeding, the burden of discovery on the State and on any witnesses, and the availability of the evidence through other sources. [People ex rel.] Daley [v. Fitzgerald], 123 Ill.2d [175,] 183-84, 121 Ill.Dec. 937, 526 N.E.2d 131 [ (1988) ]; see People v. Fair, 193 Ill.2d 256, 264-65, 250 Ill. Dec. 284, 738 N.E.2d 500 (2000).
“[205] Ill.2d at 408, [275] Ill.Dec. at 836-37, [793] N.E.2d at 607-08 (emphasis added). See also People v. Lucas, 203 Ill.2d 410, 272 Ill.Dec. 298, 787 N.E.2d 113 (2002).”
Ex parte Mack, 894 So.2d at 768-69.
Hodges’s motion for discovery contains no information with respect to the specific claims for which he deems the particular discovery requests to be necessary. He alleged, very broadly, only that the requested discovery was information that should have been investigated by trial counsel and that was “likely to lead to the discovery of relevant information regarding the petition, and particularly the claims of ineffective assistance of counsel, prose-cutorial misconduct, and innocence.” (Supp. C. 716.) However, the majority of *968 the claims Hodges raised in the petition were summarily dismissed. We have held:
“[A] claim that is procedurally barred ... clearly is not one that entitles a petitioner to relief. If a postconviction claim does not entitle the petitioner to relief, then the petitioner has failed to establish good cause for the discovery of materials related to that claim.”
Hooks v. State, 822 So.2d 476, 481 (Ala.Crim.App.2000).
As for Hodges’s acknowledgment that the requested information was “likely to lead to the discovery of relevant information regarding the petition,” that language suggests that Hodges was engaged in the type of “fishing expedition” prohibited by Ex parte Land. Based on the foregoing principles regarding the “good cause” a petitioner is required to demonstrate in order to be entitled to discovery in post-conviction proceedings, we hold that the circuit court did not abuse its discretion when it denied this overly broad discovery request.
However, based on our determination that Hodges’s claims regarding trial counsel’s investigation and presentation of mitigation evidence were sufficiently pleaded and facially valid, and that a remand for additional proceedings is required, Hodges may be entitled to discovery related to those specific claims if he files an appropriate motion seeking such discovery on remand. If a discovery motion is filed, the circuit court’s ruling on the motion should be based on the principles discussed and applied in Ex parte Land, supra. See also State v. Stallworth, 941 So.2d 327 (Ala.Crim.App.2006); Ex parte Perkins, 920 So.2d 599 (Ala.Crim.App.2005); and Hooks v. State, 822 So.2d 476 (Ala.Crim.App.2000).
IX.
Hodges contends that the circuit court erred when it denied his motion seeking $10,000 for investigative fees and expenses. In the motion, Hodges stated that investigative assistance was necessary to prove allegations of ineffective assistance of counsel and violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); he also stated that a “fact and mitigation investigator” could assist in the investigation of the circumstances of the crime and of the mitigating circumstances. (Supp. C. 705-06.) Hodges further noted in the motion that he is indigent and that his lead attorney’s offices are in Oregon. The circuit court summarily denied the motion.
On appeal, Hodges argues that the circuit court should have granted the motion because, he says, trial counsel failed to conduct an adequate investigation and that an investigator was necessary to ensure a full and fair postconviction hearing. The State contends that the circuit court did not abuse its discretion when it denied the motion for funds because postconviction petitioners are not entitled to funds for experts, and particularly when the funds are sought merely to investigate potential claims. We agree with the State.
This Court has repeatedly held that an indigent petitioner is not entitled to funds to hire experts to assist his investigation and presentation of claims in post-conviction proceedings. See, e.g., Williams v. State, 783 So.2d 108, 113-14 (Ala.Crim.App.2000) (upholding circuit court’s denial of funds to hire a psychologist, a forensic pathologist, and a forensic expert), and cases cited therein. Furthermore, we agree with the Illinois Supreme Court, which has stated:
“Since a post-conviction petitioner does not have a constitutional right to appointed counsel (People v. Porter, 122 Ill.2d 64, 73-75, 118 Ill.Dec. 465, 521 N.E.2d 1158 (1988)), there is no constitutional obligation to provide post-convic *969 tion counsel with investigative resources. See People v. Wright, 149 Ill.2d 36, 58-62, 171 Ill.Dec. 424, 594 N.E.2d 276(1992). Where no constitutional right is implicated, the decision to appoint an expert, or to authorize funds to hire an expert, rests within the sound discretion of the circuit court. See People v. Hall, 157 Ill.2d 324, 339-40, 193 Ill.Dec. 98, 626 N.E.2d 131 (1993); Wright, 149 Ill.2d at 54-58,171 Ill.Dec. 424, 594 N.E.2d 276.”
People v. Richardson, 189 Ill.2d 401, 422, 245 Ill.Dec. 109, 122, 727 N.E.2d 362, 375 (2000).
For the foregoing reasons, we find that the circuit court did not abuse its discretion when it denied Hodges’s motion for funds to hire an investigator.
X.
Hodges contends that this Court should reassign his case to a different judge on remand. Hodges alleges that a reassignment is permitted by Rule 32.6(d), Ala.R.Crim.P., that it is necessary because the current judge to whom the case was specially assigned has demonstrated consistent bias against him, and that his due-process rights will be violated if his case is not assigned to an impartial judge. The State contends that this issue is not properly before us because Hodges did not seek the judge’s removal in the circuit court. We agree with the State.
The general rules of preservation apply to postconviction proceedings, and issues that are not first raised in the circuit court are not properly before us on appeal. E.g., Hyde v. State, 950 So.2d 344, 370 (Ala.Crim.App.2006), Boyd v. State, 913 So.2d 1113,1146 (Ala.Crim.App.2003). When he initiated these postconviction proceedings, Hodges was aware of the grounds that, he claims, require reassignment of the case to another circuit judge but he did not argue for or request the transfer until he filed his brief on appeal. Thus, Hodges has no adverse ruling from which to appeal, and the issue is not properly before us.
XI.
For the reasons stated in Part VI of this opinion, we remand this case for the circuit court to either conduct an evidentiary hearing or accept evidence in the form of affidavits, written interrogatories, or depositions, see Rule 32.9(a), Ala.R.Crim.P., regarding Hodges’s allegations that trial counsel failed to conduct an adequate mitigation investigation and failed to adequately present mitigation evidence at the penalty phase. After receiving and considering the evidence presented, the circuit court shall issue specific written findings of fact regarding Hodges’s claims, and may grant whatever relief it deems necessary. Due return shall be filed with this Court within 70 days of the date of this opinion. The return to remand shall include the circuit court’s written findings of fact, a transcript of the evidentiary hearing, if one is conducted, and any other evidence received and/or relied on by the court.
REMANDED WITH DIRECTIONS.
BASCHAB, P.J., and McMILLAN, WISE, and WELCH,[11] JJ., concur.

On Return to Remand

SHAW, Judge.
In 1999, Melvin Gene Hodges was convicted of capital murder, a violation of § 13A-5-40(a)(2), Ala.Code 1975, and was sentenced to death. On direct appeal, this Court initially remanded the case to the trial court for issues relating to the sen *970 tencing order and to the weighing of the aggravating and mitigating circumstances. On return to remand, we affirmed Hodges’s conviction and death sentence. Hodges v. State, 856 So.2d 875 (Ala.Crim.App.2001). The Alabama Supreme Court affirmed our judgment. Ex parte Hodges, 856 So.2d 936 (Ala.2003). The United States Supreme Court then denied certio-rari review. Hodges v. Alabama, 540 U.S. 986, 124 S.Ct. 465, 157 L.Ed.2d 379 (2003). A certificate of judgment was issued on April 2, 2003. In 2004, Hodges filed a Rule 32, Ala.R.Crim.P., petition for post-conviction relief. In 2005, the circuit court summarily denied the petition. In an opinion issued on March 23, 2007, this Court held that the vast majority of the claims in Hodges’s petition had been properly denied by the circuit court; however, we remanded this case for the trial court
“to either conduct an evidentiary hearing or accept evidence in the form of affidavits, written interrogatories, or depositions, see Rule 32.9(a), Ala.R.Crim. P., regarding Hodges’s allegations that trial counsel failed to conduct an adequate mitigation investigation and failed to adequately present mitigation evidence at the penalty phase. After receiving and considering the evidence presented, the circuit court shall issue specific written findings of fact regarding Hodges’s claims, and may grant whatever relief it deems necessary.”
Hodges v. State, 147 So.2d 916, 969 (Ala.Crim.App.2007). This Court further directed that “[t]he return to remand shall include the circuit court’s written findings of fact, a transcript of the evidentiary hearing, if one is conducted, and any other evidence received and/or relied on by the court.” Hodges, 147 So.2d at 969.
On remand, Hodges conducted depositions of Floyd Likins and Larry Ray, Hodges’s trial counsel; Cora Cobb, Hodges’s mother; Joanne Terrell, a social worker who conducted a psychosocial evaluation of Hodges during the postconviction proceedings; Dr. Stanley Brodsky, a psychologist who reviewed numerous records and documents and conducted a psychological evaluation of Hodges during the postcon-viction proceedings; Enna Hodges, Hodges’s sister; and Billy Hodges, Hodges’s brother. The State deposed Dr. Karl Kirkland, a psychologist who reviewed numerous records and documents, including Dr. Brodsky’s test results, and conducted a psychological evaluation of Hodges during the postconviction proceedings. The depositions and numerous exhibits introduced during the depositions were submitted to the circuit court as evidence in lieu of an evidentiary hearing. Hodges also submitted a brief to the circuit court in support of the claims regarding the investigation and presentation of mitigation evidence at trial, and the State submitted to the circuit court a proposed order denying Hodges’s petition for postconviction relief.
On February 22, 2008, the circuit court entered a brief order denying Hodges’s petition. The order stated, in relevant part:
“There are six claims asserted by [Hodges] in which he claims trial counsel failed to adequately investigate and present to the jury and Court during trial. Those claims are as follows:
“1. That [Hodges] was exposed to continual and extreme violence during his youth;
“2. That alcoholism and drug abuse plagued [Hodges] and his family;
“3. That [Hodges] was raised in extreme poverty;
“4. That [Hodges] was abandoned as a child and had no male role model;
“5. That [Hodges] constantly moved between homes;
*971 “6. That he attempted to lead a positive life.
“The Court makes the following FINDINGS OF FACT with reference to each of those claims.
“During the mitigation phase of the trial the defense called Cora Cobb, [Hodges’s] mother, to testify. To a greater or lesser extent, her testimony touched on facts to establish each of the six claims made by [Hodges] as set forth above. This testimony was not disputed by the State. No cross-examination of Mrs. Cobb was conducted by the State. By virtue of the fact that each of the ‘claims’ of [Hodges] was brought before the Court and the Jury, the Court finds that the mitigation investigation conducted by attorneys for [Hodges] met the requirements of the law. The Court further finds that the presentation of this testimony by attorneys for [Hodges] was adequate and met the requirements of the law.
“The Petition for Post Conviction relief is DENIED.”
(Rem. 1492.)[1]
The circuit court’s order fails to satisfy this Court’s directions on remand and fails to satisfy Rule 32.9(d), Ala. R.Crim.P., which requires that, unless a circuit court dismisses a Rule 32 petition, the court “shall make specific findings of fact relating to each material issue of fact presented.” The parties presented to the circuit court on remand testimony from eight witnesses, and that testimony comprises more than 750 pages of record. Hundreds of additional pages of documents were offered as exhibits during the depositions of Larry Ray, Dr. Brodsky, Dr. Kirkland, Joanne Terrell, and Cora Cobb. The circuit court was directed to enter specific findings of fact about the claims Hodges raised in his Rule 32 petition regarding his counsel’s investigation and presentation of mitigation evidence at the penalty phase of his trial. However, the circuit court’s order fails to delineate any of the voluminous testimony presented during the depositions and includes no facts regarding the scope of trial counsel’s investigation and preparation for the sentencing phase of Hodges’s trial or the evidence trial counsel discovered during their investigation and presented at trial as compared to the information about which Hodges’s witnesses testified during their depositions.
Moreover, the witnesses’ testimony presented numerous conflicts. For example, Dr. Brodsky testified that the “severe abuse and deprivation” that, he said, Hodges experienced as a child caused Hodges to suffer from a dissociative disorder that “interfered with his ability to normally develop in terms of who he is .... ” (Rem. 728.) Dr. Brodsky testified that Hodges developed an alter ego, “Baldy,” who was uncaring, masterful, and in control, while Melvin, “as Melvin,” was passive, relatively dependent, relatively helpless, and “was ineffectual in coping with the major problems and stresses” in his life. (Rem. 726.) Dr. Brodsky also testified that Hodges told him that “Baldy” was in control and in charge during the days before the murder, when the robbery of the Golden Corral restaurant was being planned. (Rem. 753-54.) Dr. Kirkland, however, testified that his evaluation revealed no evidence of a dissociative disorder. Dr. Kirkland further testified that Hodges told him that “Baldy” was merely a nickname he was given when he was a baby because of his appearance and that some family members continued to refer to *972 him by that name. (Rem. 912.) The fact that “Baldy”[2] was a nickname Hodges had had since childhood was corroborated by Hodges’s mother, who told trial counsel that she had given Hodges the nickname when he was born because he was a “bald headed baby boy” (Rem. 263), and by Hodges’s brother, Bill. Bill testified that Hodges “didn’t like people calling him Melvin .... We didn’t ever refer to him as Melvin; it was always Balde.” (Rem. 1314.) Bill further testified that he never observed anything that caused him to believe that Hodges had two different personalities, Baldy and Melvin; rather, Bill said, Hodges simply preferred to be called by his nickname. (Rem. 1313-15.)[3]
Another example of the significant conflicts in the evidence is that Larry Ray, one of Hodges’s attorneys, testified that, based on a review of the notes he took during pretrial interviews of Hodges and his mother, he believed that he had asked them both whether Hodges had suffered any physical harm such as beatings or whippings at the hands of parents or parental figures, other 'than that associated with “culture appropriate discipline,” and that both had denied such physical harm. (Rem. 311, 313-14.) However, one of Hodges’s primary claims in his petition was that he had repeatedly been beaten by stepfathers and grandparents, and he presented testimony from his mother (Rem. 208-09, Rem. 211-12), Joanne Terrell (Rem. 544-54), and his siblings (e.g., Rem. 1166-71, 1178, 1261, 1267, 1278) in support of those allegations.
The circuit court’s conclusory statement in its order on return to remand that “[t]o a greater or lesser extent, [Hodges’s mother’s] testimony [at trial] touched on facts to establish each of the six claims” Hodges alleged that trial counsel should have investigated and presented (Rem. 1492) does not satisfy the requirement of this Court’s instructions on remand, nor does it satisfy the requirement set out in Rule 32.9(d), Ala.R.Crim.P., regarding specific fact-findings for each claim. In addition, the circuit court’s conclusion that, because Hodges’s mother “touched on” certain facts about Hodges’s childhood in her testimony during the penalty phase of Hodges’s trial, trial counsel’s mitigation investigation and their presentation of the testimony “met the requirements of the law,” is a legal conclusion that is not supported by any specific facts in the court’s order. The lack of specific fact-findings in the order on return to remand prevents this Court from conducting an adequate review of the circuit court’s ruling, particularly in light of the extensive evidence presented on remand, some of which, as discussed above, presented substantial conflicts. See, e.g., Ex parte Grau, 791 So.2d 345, 346-47 (Ala.2000) (review of claims of ineffective assistance of counsel premature, where case remanded for trial court to enter specific findings of fact as to the claims).
Therefore, we have no alternative but to again remand this case to the circuit court. On remand, the circuit court is directed to enter a new order in which it makes specif *973 ic, 'written findings of fact regarding each of the specific claims Hodges raised in his petition about trial counsel’s alleged failure to conduct an adequate investigation into mitigation evidence and to adequately present mitigation evidence at the penalty phase of his trial. The court’s order must include specific findings of fact about the evidence that was presented by the parties on remand and the evidence presented at trial, as well as an analysis of. Hodges’s allegations and the evidence presented in light of the two-pronged analysis established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for claims of ineffective assistance of counsel, so that the basis for the circuit court’s ruling is clear on the record. Although the parties presented evidence on remand and additional proceedings are not required to comply with our directions, the circuit court may conduct any additional proceedings it deems necessary. Due return shall be filed with this Court within 56 days of the date of this opinion and shall include the circuit court’s amended order addressing Hodges’s claims and, if the circuit court conducts a hearing or receives additional evidence, a transcript of any proceedings and a copy of any additional evidence submitted.
REMANDED WITH DIRECTIONS*
BASCHAB, P.J., and McMILLAN, WISE, and WTELCH, JJ., concur.

. Hodges does not raise on appeal all the claims the circuit court dismissed on procedural grounds. Those claims not pursued on appeal are deemed abandoned. See, e.g., Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995) ("We will not review issues not listed and argued in brief.").

. The record in this case includes a six-volume record and a seven-volume supplemental record. Pages in the supplemental record are designated "Supp. C._.”

. On direct appeal, Hodges argued that the trial judge was biased against him and, specifically, that the judge erred in refusing to recuse himself from the case. We examined the issue thoroughly and concluded as follows:
“We have reviewed the record and find no evidence of any bias on the part of the trial court. On occasion, the trial court did exhibit some impatience with the defense because of the approximately 70 motions that Hodges’s lawyers filed on his behalf, but this impatience is insufficient evidence of bias. Moreover, the trial court detailed its reasons for overriding the jury’s recommendation. There is no evidence that the trial court, without reason or as a result of bias, chose to sentence Hodges to death. The record contains no clear evidence of bias in this case. Therefore, the trial court did not abuse its discretion in denying the motion to recuse.”
Hodges, 856 So.2d at 898-99.

. Hodges did not allege in his petition that his allegations of juror misconduct could not have been raised at trial or on appeal. See Ex parte Pierce, 851 So.2d 606 (Ala.2000), and Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003)

. In his claim asserting that the prosecutor failed to provide “Complete Copies of All Reports, Photographs, and Other Evidence and Information Generated That Was Relevant To This Case” (SuPP- c- 1069)< HodSes did not allege that the claim was based on newly discovered evidence.

. This claim is also moot because the Alabama Legislature amended § 15-18-82, Ala. Code 1975, to provide that the primary method of execution in Alabama was to be by lethal injection. See Lewis v. State, 889 So.2d 623 (Ala.Crim.App.2003).

. To the extent Hodges argues in his brief that the circuit court erred when it considered each of his allegations of ineffective assistance of counsel individually, Hodges is not entitled to any relief because the issue has been decided adversely to him. See Coral v. State, 900 So.2d 1274, 1284 (Ala.Crim.App.2004) ("The claim of ineffective assistance of counsel is a general allegation that often consists of numerous specific subcategories. Each subcategory is a[n] independent claim that must be sufficiently pleaded.”), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala. 2005).

. "(TR._)” refers to pages from the trial record in this case.

. Hodges alleged in Claim I.H.6. and I.U.7. that trial counsel were ineffective for failing to investigate and present evidence indicating that he was possibly brain damaged and mentally ill. We reviewed those claims and determined that they were insufficiently pleaded and were properly dismissed. See Part V.E. of this opinion.

. Hodges filed a motion for reconsideration of the circuit court’s ruling on the discovery motion. He noted that the State had argued that he was not entitled to discovery, in part because many of the claims in the petition were due to be summarily dismissed. Hodges then alleged that, even though the circuit court had dismissed many of the claims, discovery would be appropriate for the remaining claims.

. Citations to the record on return to remand will be designated "(Rem.),” followed by the relevant page number or numbers.

. Hodges’s nickname is sometimes spelled "Balde” in the record. (Rem. 1313-14.)

. In the initial opinion reviewing the circuit court's denial of Hodges’s petition, this Court affirmed the circuit court’s denial of Claims I.H.6. and I.U.7. of Hodges's petition. Those claims alleged that trial counsel were ineffective for failing to investigate and present evidence as to whether Hodges was possibly brain-damaged and mentally ill. Hodges v. State, 147 So.3d 916, 944-46 (Ala.Crim.App.2007). To the extent Dr. Brodsky's testimony about the alleged dissociative disorder related to those claims of the petition, the testimony was irrelevant. However, to the extent Hodges presented the testimony in support of the claims regarding the abuse and abandonment he had allegedly suffered, the evidence was properly before the circuit court on remand.

 Note from the reporter of decisions: On July 23, 2010, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On October 22, 2010, that court denied rehearing, without opinion.